**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| SHANNAN WHEELER, *et al.*, | CIVIL ACTION |
| *Plaintiffs*, | Case No. 4:17-cv-2960 |
| v. | Hon. Keith P. Ellison |
| ARKEMA INC., | |
| *Defendant*. | |

## <u>CLASS ACTION SETTLEMENT AGREEMENT</u>

**EXHIBIT
A**

## <u>TABLE OF CONTENTS</u>

I.      RECITALS ........................................................................................................ 1

II.     DEFINITIONS................................................................................................... 4

III.    SETTLEMENT FUNDS.................................................................................. 8

IV.     CLASS NOTICE AND SETTLEMENT ADMINISTRATION ...................... 13

V.      ATTORNEYS' FEES AND INCENTIVE AWARDS...................................... 15

VI.     CLASS SETTLEMENT PROCEDURES ........................................................ 16

VII.    RELEASES........................................................................................................ 19

VIII.   ADDITIONAL PROVISIONS ......................................................................... 20

## CLASS ACTION SETTLEMENT AGREEMENT

This Class Action Settlement Agreement (the "Agreement" or "Settlement Agreement," as defined in Part II) is entered into between Plaintiffs (as defined in Part II), on behalf of themselves individually and on behalf of the Class (as defined in Part II), on the one hand, and Defendant (as defined in Part II), on the other hand, subject to the terms and conditions set forth below and the approval of the Court (as defined in Part II).

## I.   RECITALS

1.1.   On October 3, 2017, Plaintiffs Shannan Wheeler, Kelly and David Phelps, Corey Prantil, Ronald and Betty Whatley, Keith Lyons, Bevely and Roland Flannel, Ezequiel Villareal, Bret and Phyllis Simmons, Greg Nason, and Larry and Tanya Anderson filed a Class Action Complaint in the United States District Court for the Southern District of Texas on behalf of themselves individually and all others similarly situated against Arkema France S.A. and Arkema Inc., asserting claims for negligence, trespass, nuisance, property damage, personal injury, failure to warn, product liability, ultra-hazardous activity, gross negligence, negligent infliction of emotional distress, punitive damages, and piercing the corporate veil.

1.2.   On December 18, 2017, Plaintiffs filed a First Amended Class Action Complaint asserting claims for negligence, trespass, private nuisance, public nuisance, violation of the Resource Recovery and Conservation Act, violation of the Comprehensive Environmental Response, Compensation, and Liability Act, violation of the Clean Water Act, strict products liability, and failure to warn.

1.3.   On January 25, 2018, Arkema Inc. moved to dismiss Plaintiffs' claims for trespass, private nuisance, public nuisance, violation of the Resource Recovery and Conservation Act, violation of the Comprehensive Environmental Response, Compensation, and Liability Act, violation of the Clean Water Act, strict products liability, and failure to warn.  The Court denied in part and granted in part Arkema Inc.'s motion to dismiss on May 30, 2018.

1.4.   On April 16, 2018, Arkema S.A. (incorrectly sued as Arkema France S.A.) moved to dismiss all claims brought against it.  The Court granted Arkema S.A.'s motion and dismissed it from the Litigation on May 30, 2018.

1.5.   On June 19, 2018, Plaintiffs filed a Second Amended Class Action Complaint against Arkema Inc. asserting claims for negligence, trespass, public nuisance, violation of the Resource Recovery and Conservation Act, and violation of the Comprehensive Environmental Response, Compensation, and Liability Act.

1.6.   On November 13, 2018, the Court entered an order dismissing without prejudice the claims of Shannan Wheeler, Ezequiel Villareal, and Kelly and David Phelps, thereby dropping them as named plaintiffs and proposed class representatives.  Their claims are each subject to the Release in Section VII below because they are Class Members.

1.7.   Plaintiffs filed a Motion for Class Certification on February 26, 2019, seeking to certify a class for property damage under Federal Rule of Civil Procedure 23(b)(3) and classes for property remediation and medical surveillance under Federal Rule of Civil Procedure 23(b)(2),

with Corey Prantil, Ronald Whatley, Betty Whatley, Bevely Flannel, Roland Flannel, Greg Nason, Larry Anderson, and Tanya Anderson as proposed class representatives. Class Counsel did not seek to appoint Bret or Phyllis Simmons as class representatives, and they have not dismissed their claims.

1.8.     The Court issued its Memorandum and Order on June 3, 2019, granting Plaintiffs' Motion for Class Certification, certifying a class for property damage under Federal Rule of Civil Procedure 23(b)(3) and classes for property remediation and medical surveillance under Federal Rule of Civil Procedure 23(b)(2), with all classes defined as follows: "All residents and real property owners located within a 7-mile radius of the Crosby, Texas, Arkema Chemical Plant." The Court's Memorandum and Order appointed Class Counsel, and also appointed Corey Prantil, Ronald Whatley, Betty Whatley, Bevely Flannel, Roland Flannel, Greg Nason, Larry Anderson, and Tanya Anderson as class representatives.

1.9.     Arkema Inc. filed a Petition for Permission to Appeal pursuant to Federal Rule of Civil Procedure 23(f) on June 17, 2019, which the United States Court of Appeals for the Fifth Circuit granted on October 17, 2019.

1.10.    On January 22, 2021, the United States Court of Appeals for the Fifth Circuit issued its order vacating the Court's June 3, 2019, Memorandum and Order, and remanding the Litigation to this Court for further proceedings.

1.11.    On August 2, 2021, Plaintiffs filed a Suggestion of Death for Ronald Whatley. Ronald Whatley's claims are subject to the Release in Section VII below because he was a class member.

1.12.    On August 12, 2021, the Court permitted Class Counsel to withdraw from representing Greg Nason. While the Court did not subsequently enter an order dismissing Greg Nason's claims, they are subject to the Release in Section VII below because Greg Nason is a Class Member.

1.13.    On November 23, 2021, Plaintiffs filed a renewed Motion for Class Certification, seeking to certify a class for property damage under Federal Rule of Civil Procedure 23(b)(3) and classes for property remediation and medical surveillance under Federal Rule of Civil Procedure 23(b)(2), with Corey Prantil, Betty Whatley, Bevely Flannel, Roland Flannel, Larry Anderson, and Tanya Anderson as proposed class representatives. Class Counsel did not seek to appoint Ronald Whatley as a class representative.

1.14.    The Court issued its Memorandum and Order on May 18, 2022, granting Plaintiffs' Motion for Class Certification, in part, certifying classes for property remediation and medical surveillance under Federal Rule of Civil Procedure 23(b)(2) pursuant to the Resource Conservation and Recovery Act and the Comprehensive Environmental Response, Compensation, and Liability Act, defined as "All residents and real property owners located within a 7-mile radius of the Crosby, Texas, Arkema Chemical Plant," and denying Plaintiffs' request to certify a property damages class under Federal Rule of Civil Procedure 23(b)(3). The Court's Memorandum and Order appointed Class Counsel and Corey Prantil, Betty Whatley, Bevely Flannel, Roland Flannel, Larry Anderson, and Tanya Anderson as the Class Representatives. Bret and Phyllis Simmons

were not put forward as proposed class representatives in Plaintiffs' November 23, 2021, renewed Motion for Class Certification, but the Plaintiffs will file an Unopposed Motion to Amend the Court's Class Certification Order to add Bret and Phyllis Simmons as Class Representatives.

1.15.    Arkema Inc. filed a Petition for Permission to Appeal pursuant to Federal Rule of Civil Procedure 23(f) on June 1, 2022, which the United States Court of Appeals for the Fifth Circuit denied on July 20, 2022.

1.16.    Class Counsel and Defendant's Counsel have conducted a thorough examination and investigation of the facts and law relating to the matters in the Litigation.  Such investigation and discovery included requesting and receiving written discovery responses, examining hundreds of thousands of pages of Defendant's documents, retaining 20+ expert witnesses and reviewing their expert reports, conducting more than 30 depositions, participating in days of hearings on the admissibility of expert testimony, and conducting two full class certification proceedings in the matter, including two full rounds of briefing and two lengthy hearings.

1.17.    Class Counsel and Defendant's Counsel also participated in multiple efforts to resolve the Litigation.  Throughout 2021, the Parties made multiple attempts to resolve the matter in mediation, which were unsuccessful.  On September 7, 2022, all Parties participated in mediation with the Honorable Dena Palermo and subsequently had follow-up conversations to advance the mediation.  On October 26, 2022, and May 25, 2023, the parties further discussed resolution with Judge Palermo.  As a result of these efforts, the parties have reached the settlement memorialized in this Agreement.  This Agreement is the result of extensive arm's-length negotiations conducted in good faith by counsel for the Parties.  The Parties did not discuss or negotiate Attorneys' Fees until after the Parties had already agreed upon relief for the Class.

1.18.    Defendant denies all of Plaintiffs' Allegations and charges of wrongdoing or liability against Defendant arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in the Litigation.  Defendant also denies that Plaintiffs, the Class, or any Class Member, has suffered damage or harm by reason of any alleged conduct, statement, act or omission of Defendant.  Defendant further denies that the evidence is sufficient to support a finding of liability on any of Plaintiffs' claims in the Litigation or to maintain a proper class.

1.19.    Class Counsel have analyzed and evaluated the merits of the Parties' contentions and this Settlement as it impacts all the Parties and the Class Members.  Among the risks of continued litigation for Plaintiffs are the risks of failing to prove liability and damages on a class-wide or individual basis and the possibility that the Class could be decertified as a result of an appeal from a final judgment.  In particular, there may be difficulties establishing, on a class-wide basis, liability issues of exposure, injury, and causation, and establishing entitlement to relief under the Resource Conservation and Recovery Act or the Comprehensive Environmental Response, Compensation, and Liability Act such as would be necessary to obtain relief under these environmental statutes, including an injunctive remedy on a class-wide basis.  Plaintiffs and Class Counsel, after taking into account the foregoing along with other risks and the costs of future litigation, are satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate, and that a settlement of the Litigation and the prompt provision of effective relief to the Class are in the best interest of the Class Members.

1.20.    Defendant agrees that the Settlement is fair and reasonable in light of the merits and risks of the case.  While continuing to deny all allegations of wrongdoing and disclaiming any liability with respect to any and all claims, Defendant nevertheless has chosen to enter into this Agreement in order to avoid further burden, expense, uncertainty, inconvenience, and interference with its ongoing business operations attendant to defending the Litigation and putting to rest the Released Claims.

1.21.    This Agreement reflects a compromise between the Parties, and shall in no event be construed as or deemed to be an admission or concession by any Party of the truth of any allegation or the validity of any purported claim or defense asserted in any of the pleadings in the Litigation, or of any fault on the part of Defendant, and all such Allegations are expressly denied. Nothing in this Agreement shall constitute an admission of liability or be used as evidence of liability, by or against any Party.  This Agreement is the result of compromise that benefits the Class as a whole.  The provisions hereof do not constitute an admission of fault or an endorsement of any testing or remediation standards referred to therein.  The Parties continue to dispute the validity of the other's positions, including without limitation on: any application of the Texas Commission for Environmental Quality's standards for dioxin remediation; the availability of the relief sought under either the Resource Conservation and Recovery Act or Comprehensive Environmental Response, Compensation, and Liability Act; and proof of exposure, injury, causation, or damages.

1.22.    The undersigned Parties agree, subject to approval by the Court, that the Litigation between Plaintiffs, on the one hand, and Defendant, on the other hand, shall be fully and finally compromised, settled, and released on the terms and conditions set forth in this Agreement.

NOW, THEREFORE, in consideration of the covenants and agreements set forth herein, and of the releases and dismissal of claims described below, the Parties agree to this Settlement, subject to Court approval, under the following terms and conditions.

## II.    DEFINITIONS

A.    Capitalized terms in this Agreement shall be defined as follows:

2.1.    "Administration Costs" means the actual and direct costs reasonably charged by the Settlement Administrator for its services as provided for in this Agreement.

2.2.    "Agreement," "Settlement Agreement," or "Settlement" means this Class Action Settlement Agreement, including all exhibits (numbered 1 through 5), which exhibits are incorporated by reference and form a part of this Agreement.

2.3.    "Allegations" means all of the allegations asserted in each of the complaints filed in the Litigation, on October 3, 2017, December 18, 2017, and June 19, 2018, as well as claims that could be pursued under the laws of the United States or any state on the basis of one or more of those allegations.

2.4.    "Anonymized Epidemiological Study" means the anonymized epidemiological study described in Section 3.4, below.

4

2.5.     "Anonymized Epidemiological Study Escrow Account" means the escrow account used to fund the Anonymized Epidemiological Study.

2.6.     "Anonymized Epidemiological Study Fund" means the amount of the Settlement Fund created to pay for the Anonymized Epidemiological Study.

2.7.     "Attorneys' Fees" means such funds as may be awarded by the Court at its discretion to compensate Class Counsel, as described more particularly in Part V of this Agreement.

2.8.     "Attorneys' Expenses" means such funds as may be awarded by the Court at its discretion to reimburse Class Counsel for their Expenses/Costs incurred in the Litigation.

2.9.     "Class" or "Class Members" means all residents and real property owners located within a 7-mile radius of the Crosby, Texas, Arkema Inc. Chemical Plant since August 30, 2017.  Excluded from the class are (a) the Honorable Keith P. Ellison and the Honorable Dena Palermo, any member of their staff who worked directly on this Litigation, and any member of their immediate families; (b) counsel for the Parties, any member of their respective staff who worked directly on this Litigation, and any member of their immediate families; (c) any government entity; (d) any entity or real property in which Defendant has a controlling interest; and (e) any of Defendant's subsidiaries, parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns.

2.10.    "Class Area" means all real property located within a 7-mile radius of the fenceline boundary of the Crosby, Texas, Arkema Inc. Chemical Plant.

2.11.    "Class Counsel" means the law firms of Stag Liuzza LLC, Underwood Law Offices, Thompson Barney, and Bonnett Fairbourn Friedman & Balint PC.

2.12.    "Class Notice" means all types of notice that will be provided to Class Members pursuant to Federal Rule of Civil Procedure 23, the Preliminary Approval Order, the Final Approval Order, and this Agreement.

2.13.     "Class Representatives" means Larry Anderson, Tanya Anderson, Bevely Flannel, Roland Flannel, Corey Prantil, Betty Whatley, Bret Simmons, and Phyllis Simmons (each individually a "Class Representative").

2.14.    "Court" means the United States District Court for the Southern District of Texas.

2.15.    "Defendant" means Arkema Inc.

2.16.    "Defendant's Counsel" means the law firms of K&L Gates LLP, Schirrmeister, Diaz-Arrastia, Brem LLP, Rusty Hardin & Associates, LLP, and Amandes PLLC.

2.17.    "Effective Date" means the latest of the following: (a) thirty-one (31) days after the entry of the Final Approval Order and Final Judgment if no objections are filed or if objections are filed and overruled and no appeal is taken from the Final Approval Order and Final

Judgment; or (b) if a timely appeal is made, three (3) business days after the date that a judgment of the United States Court of Appeals for the Fifth Circuit or Supreme Court of the United States affirming the Final Approval Order and Final Judgment, and the Final Approval Order and Final Judgment is no longer subject to further appeal or review.

2.18.   "Escrow Accounts" means the Property Characterization/Remediation Escrow Account, the Anonymized Epidemiological Study Escrow Account, the Incentive Awards Escrow Account, and the Expenses Escrow Account, collectively.

2.19.   "Expenses Escrow Account" means the account used to make payments for any Expenses/Costs.

2.20.   "Expenses/Costs" means (i) costs incurred by Class Counsel in connection with this Litigation and/or the settlement thereof, including prior to the execution of this Settlement and, including without limitation, Plaintiffs' sampling costs, expert fees and costs, travel, board, and lodging, doctors' fees, costs of class notice, bank and accounting fees, and court costs; (ii) costs for implementation and/or administration of any trusts or funds associated with the Settlement Fund or (iii) any such or other costs that may be incurred in the future by Plaintiffs, Class Counsel, and/or the Class in connection with the execution and implementation of this Settlement.

2.21.   "Final Approval Hearing" means the final hearing to be conducted by the Court on such date as the Court may order to determine the fairness, adequacy, and reasonableness of the Settlement in accordance with applicable jurisprudence, to be held after Class Notice has been provided to Class Members in accordance with the Notice Plan, and during which the Court will: (a) consider the merits of any objections to this Agreement and/or any aspect of the Settlement; (b) determine whether to grant Final Approval to the Settlement and enter the Final Approval Order and Final Judgment; (c) determine whether to approve an Incentive Award and in what amount; and (d) rule on Class Counsel's application for Attorneys' Fees and Expenses/Costs.

2.22.   "Final Approval" or "Final Approval Order" means an order, substantially in the form of Exhibit 4, granting final approval of this Settlement (without modification unless agreed upon by both Parties) as binding upon the Parties.

2.23.   "Final Judgment" means the final judgment dismissing the Litigation against Defendant with prejudice.

2.24.   "Incentive Award" means any funds that may be awarded by the Court at its discretion to compensate any Class Representatives for their efforts in bringing this Litigation and/or achieving the benefits of this Settlement on behalf of the Class, as further discussed in Part V.

2.25.   "Incentive Awards Escrow Account" means the account used to pay for any Incentive Awards.

2.26.   "Litigation" means *Shannan Wheeler, et al. v. Arkema Inc.*, United States District Court for the Southern District of Texas, Case No. 4:17-2960-KPE.

2.27. "Long Form Notice" means a notice in substantially the same form as Exhibit 3, which the Settlement Administrator shall make available on the Settlement Website.

2.28. "Notice Date" means the day on which the Settlement Administrator initiates the Notice Plan, which shall be no later than thirty (30) days following the date of Preliminary Approval.

2.29. "Notice Plan" means the procedure for providing notice to the Class, as set forth in Part IV.

2.30. "Objection Deadline" means the deadline by which Class Members must submit objections to the Settlement, subject to the terms set forth in the Preliminary Approval Order, which is the date sixty (60) days after the Notice Date or such date otherwise ordered by the Court.

2.31. "Parties" means the Class Representatives and Defendant, collectively.

2.32. "Party" means either the Class Representatives or Defendant.

2.33. "Plaintiffs" means Larry Anderson, Tanya Anderson, Bevely Flannel, Roland Flannel, Corey Prantil, Betty Whatley, Bret Simmons, and Phyllis Simmons (each individually a "Plaintiff").

2.34. "Postcard Notice" means a notice substantially in the form of Exhibit 2.

2.35. "Preliminary Approval" or "Preliminary Approval Order" means an order entered by the Court, substantially in the form of Exhibit 1, preliminarily approving the terms and conditions of this Agreement without modification unless agreed to by both Parties.

2.36. "Property Characterization Participation Payments" shall mean the payments described in Section 3.3.g, below.

2.37. "Property Characterization/Remediation Escrow Account" means the escrow account used to fund the Property Characterization and Remediation Work.

2.38. "Property Characterization/Remediation Fund" means the amount of the Settlement Fund to perform the Property Characterization and Remediation Work, including any Property Characterization Participation Payments, Property Remediation Participation Payments, and costs of the Settlement Administrator for completing the performance of the Property Characterization and Remediation Work as approved by the Court.

2.39. "Property Characterization and Remediation Work" means that work described in Section 3.3 below.

2.40. "Property Remediation Participation Payments" shall mean the payments described in Section 3.3.h, below.

2.41.   "Released Claims" means the claims released as set forth in Part VII of this Agreement.

2.42.   "Released Parties" include Defendant and its current and former parent companies, subsidiaries, affiliates, divisions, and current and former affiliated individuals and entities, legal successors, predecessors (including companies they have acquired, purchased, or absorbed), assigns, joint ventures, and each and all of their respective officers, partners, directors, owners, stockholders, servants, agents, shareholders, members, managers, principals, investment advisors, consultants, employees, representatives, attorneys, accountants, lenders, underwriters, benefits administrators, investors, funds, and insurers, past, present and future, and all persons acting under, by, through, or in concert with any of them.

2.43.   "Settlement Administrator" means Edgar C. Gentle, III, an independent individual, whom the Parties will ask the Court to appoint, to provide services in the administration of this Settlement, including (i) providing Class Notice to the Class Members pursuant to the Notice Plan set forth in this Agreement, (ii) administering the Property Characterization/Remediation Fund as set forth in this Agreement, (iii) funding the Anonymized Epidemiological Survey Fund as set forth in this Agreement, and (iv) processing other documents and performing other tasks as set forth in this Agreement, as otherwise agreed to by the Parties, or as ordered by the Court with the express, written consent of the Parties.

2.44.   "Settlement Fund" shall mean the monies described in Section 3.1 below.

2.45.   "Settlement Website" means an internet website created and maintained by the Settlement Administrator consistent with the entry of the Preliminary Approval Order to provide information regarding the Settlement, Settlement Funds, and where Class Members can obtain information concerning objecting to the Settlement.  The URL of the Settlement Website shall be: crosbyharveysettlement.com.

2.46.   "Unused Funds" means any Settlement Fund amounts remaining in any of the Escrow Accounts after completion of the work and/or purpose described for those Escrow Accounts.

B.      Conventions.  All personal pronouns used in this Agreement, whether used in the masculine, feminine, or neuter gender, shall include all other genders and the singular shall include the plural and vice versa except where expressly provided to the contrary.  All references herein to sections, paragraphs, and exhibits refer to sections, paragraphs, and exhibits of and to this Agreement, unless otherwise expressly stated in the reference.  The headings and captions contained in this Agreement are inserted only as a matter of convenience and in no way define, limit, extend or describe the scope of this Agreement or the intent of any provision thereof.

## III.   SETTLEMENT FUNDS

3.1.   <u>Payment of Cash Settlement Amounts into Escrow Account</u>.  On the Effective Date, Defendant shall make a payment in the amount of Twenty Four Million Dollars ($24,000,000.00) (the "Settlement Fund") into a single escrow account, which shall be directed by the Settlement Administrator into four escrow accounts as follows:

(a)     Twenty Million One Hundred Thousand Dollars ($20,100,000.00) into the Property Characterization/Remediation Escrow Account to create the Property Characterization/Remediation Fund;

(b)     One Million Seven Hundred Thousand Dollars ($1,700,000.00) into the Anonymized Epidemiological Study Escrow Account to create the Anonymized Epidemiological Study Fund;

(c)     Two Hundred Thousand Dollars ($200,000.00) into the Incentive Awards Escrow Account; and

(d)     Two Million Dollars ($2,000,000.00) into the Expenses Escrow Account.

3.2.    The Escrow Accounts will be at an institution jointly agreed to by Class Counsel and the Settlement Administrator and under terms acceptable to both Class Counsel and the Settlement Administrator.  Any fees incurred on account of paying the Settlement Fund into the Escrow Accounts shall be considered Administration Costs and paid out of the Escrow Expenses Account.

3.3.    <u>Property Characterization and Remediation Fund</u>.    The Property Characterization/Remediation Fund shall be used exclusively to perform the Property Characterization and Remediation Work, which includes any Property Characterization Participation Payments, Property Remediation Participation Payments, and costs of the Settlement Administrator for completing the performance of the Property Characterization and Remediation Work as approved by the Court.  The Property Characterization and Remediation Work shall be performed for the benefit of the Class, and shall occur exclusively pursuant to the following parameters:

(a)     All Property Characterization and Remediation Work shall be performed by one or more environmental firms with offices located in Texas that are qualified to perform the work in accordance with generally accepted industry standards.  The Settlement Administrator shall select and engage such contractors from the list of firms included as Exhibit 5, which has been jointly approved by the Parties (the "Contractors").

(b)     During the one-year period following the Effective Date, all Class Members are eligible for site assessment and characterization for any real property that they own within the Class Area.  The collection and analysis of soil or indoor dust samples shall be performed on a first-come, first-served basis.

(c)     The Contractors shall analyze any collected soil or indoor dust samples only for dioxin compounds (as 2,3,7,8-TCDD toxicity equivalent quotients ("TEQs")).  None of the Property Characterization/Remediation Fund may be used to analyze for or remediate any other "chemicals of concern," as that term is defined in 30 Tex. Admin. Code § 350.4(a)(11).

(d)     Any real property where concentrations of dioxin in soil samples exceed the Texas Commission on Environmental Quality's ("TCEQ's") Tier 1 Residential $^{Tot}Soil_{Comb}$ Protective Concentration Level (PCL) in effect on the Effective Date ("the TCEQ Dioxin Standard") shall be eligible for remediation of the portions of the real property exceeding the

9

TCEQ Dioxin Standard, subject to the consent of the Class Member who owns the real property. The Contractors engaged by the Settlement Administrator may elect to, but are not required to, prepare an Affected Property Assessment Report under TCEQ's Texas Risk Reduction Plan ("TRRP") for any real properties where concentrations of dioxin in soil samples exceed the TCEQ Dioxin Standard throughout the duration of the Property Characterization and Remediation Work.

(e)     After the one-year site assessment and characterization period has concluded and any real property in the Class Area exceeding the TCEQ Dioxin Standard has been remediated as set forth in Section 3.3.d above, the Settlement Administrator shall have the discretion to direct the Contractors to conduct, subject to the real property owner's request and consent, any or all of the following additional activities at any real property within the Class Area based on whatever ranking or priority criteria the Settlement Administrator develops, until the Property Characterization/Remediation Fund has been depleted: (1) remediate dioxin contamination in soil on properties that were subjected to site assessment and characterization during that one-year period where concentrations of dioxin in soil samples did not exceed the TCEQ Dioxin Standard; (2) remediate dioxin contamination in indoor dust; and (3) reopen the eligibility for Class Members to have site assessment and characterization for dioxin compounds performed on soil and indoor dust at their real property within the Class Area.

(f)     For any remediated properties, any excavated soils or other remediation wastes generated at any time during the Property Characterization and Remediation Work will be disposed of: (1) in compliance with all applicable federal and state requirements; and (2) at a site or sites that Defendant approves.

(g)     Any Class Member(s) who are current real property owners and whose real property is characterized shall be entitled to a single Property Characterization Participation Payment in the total sum of $150 per characterized property, except in no event shall the cumulative total Property Characterization Participation Payments to all Class Members exceed $150,000.  For the avoidance of doubt, if and when the Settlement Administrator has issued $150,000 in Property Characterization Participation Payments, no additional Property Characterization Participation Payments shall be made.

(h)     Any Class Member(s) who are current real property owners and whose real property is remediated shall be entitled to a single Property Remediation Participation Payment in the total sum of $300 per remediated property, except in no event shall the cumulative total of Property Remediation Participation Payments to all Class Members exceed $300,000.  For the avoidance of doubt, if and when the Settlement Administrator has issued $300,000 in Property Remediation Participation Payments, no additional Property Remediation Participation Payments shall be made.

(i)     The Settlement Administrator shall at most issue only one Property Characterization Participation Payment and one Property Remediation Participation Payment per parcel within the Class Area. In the event that a parcel within the Class Area is owned by more than one Class Member, the Settlement Administrator shall have the discretion to split the one Property Characterization Participation Payment and/or the one Property Remediation Participation Payment between the parcel owners in whatever proportions he sees fit, with consideration given to publicly available ownership records.

(j)      The Property Characterization and Remediation Work shall be completed within four years of the Effective Date, subject to the Settlement Administrator's right to petition the Court for an extension of time for good cause shown.

(k)      The Settlement Administrator will promptly provide Class Counsel and Defendant's Counsel a copy of any documents generated as part of the Property Characterization and Remediation Work or its administration as a matter of course.

(l)      In administering the Property Characterization and Remediation Work, the Settlement Administrator may review any portion of the evidentiary record developed in the Litigation.

(m)      In administering the Property Characterization and Remediation Work, the Settlement Administrator may communicate directly with Class Members in order to effectuate the purposes of this Settlement.

3.4.    <u>Anonymized Epidemiological Study Fund</u>.   The Anonymized Epidemiological Study Fund shall be used exclusively to perform the Anonymized Epidemiological Study.   The Anonymized Epidemiological Study shall be performed for the benefit of the Class.   The Anonymized Epidemiological Study shall be conducted exclusively as follows:

(a)      Baylor College of Medicine, if it accepts the engagement, shall exclusively design, administer, and conduct an epidemiological study, with no further input or involvement of Class Counsel, Defendant's Counsel, or the Settlement Administrator, with the following purpose statement:

> The proposed research includes identifying an appropriate study population and characterizing dioxin and dioxin-like exposures from the Arkema Inc. Plant chemical fires during early September 2017.   These fires occurred when organic peroxides stored in refrigerated trailers decomposed.   The exposure characterization may rely on results from soil sampling for dioxins and dioxin-like substances of residents and property owners residing within a 7-mile radius of the Arkema Inc., Crosby facility.   This soil sampling will identify geographic areas (e.g., at least three zones of areas with higher exposure and lower exposure).   These geographic areas can then be used to compare health incidence outcomes by exposure gradient.   Because the presumptive latency period for cancers following exposure is at least 20 years (and may be longer), the research will establish a study population that could be followed for site-specific cancers or chronic respiratory disorders in the future. Cancer outcomes will be ascertained using cancer registry data for cancer incidence in Texas to identify whether the risk of incident site-specific cancers increases with exposure.   Similarly, the incidence of chronic respiratory disorders will be ascertained based on diagnoses by doctors to identify whether the risk of respiratory disorders increases with exposure gradient.   As part of this research,

the investigators should consider potential confounding factors and exposures, including additional sources of exposure to dioxins and dioxin-like compounds. This research may also build on research previously conducted by Baylor College of Medicine on the mental health and respiratory and allergic symptoms following Hurricane Harvey.

(b)      If Baylor College of Medicine declines the engagement to perform the work described in Section 3.4.a, above, the University of Texas-Houston School of Public Health will be contacted for the engagement to perform such work.

(c)      If the University of Texas-Houston School of Public Health declines the engagement to perform the work described in Section 3.4.a, above, Texas A&M University School of Public Health (College Station) will be contacted for the engagement to perform such work.

(d)      If none of those three institutions (Baylor College of Medicine, University of Texas-Houston School of Public Health, and Texas A&M University School of Public Health (College Station)) agree to the engagement to perform the work described in Section 3.4.a, above, the Parties will confer and reach agreement on an alternative, Texas-based institution that is qualified to, capable of, and willing to perform such work, subject to approval by the Court. Should the Parties be unable to reach such agreement, they will submit the dispute to non-binding mediation before Judge Palermo.

(e)      The Settlement Administrator's role with respect to the Anonymized Epidemiological Study shall be limited to funding the Anonymized Epidemiological Settlement Fund once the Settlement Fund is paid and providing soil-sampling results to the institution performing the Anonymized Epidemiological Study, upon request. The Settlement Administrator shall not use any of the anonymized epidemiological study results in his administration of the Property Characterization and Remediation Fund or for any other purpose.

(f)      The Anonymized Epidemiological Study must include a clause specifying that neither Party is deemed to have accepted or endorsed the results of the study and that such study is not to be used in future litigation.

3.5.    Use of Funds in the Escrow Accounts.

(a)      The funds in each of the Escrow Accounts shall be used exclusively for the performance or payment of the work described therein, and for no other purpose, except as provided for under Section 3.5(e). For the avoidance of doubt: (i) the amount of the Settlement Fund in the Property Characterization/Remediation Escrow Account must be used exclusively for the performance of the Property Characterization and Remediation Work and for no other purpose; (ii) the amount of the Settlement Fund in the Anonymized Epidemiological Study Escrow Account must be used exclusively for the performance of the Anonymized Epidemiological Study and for no other purpose; (iii) the amount of the Settlement Fund in the Incentive Awards Escrow Account must be used exclusively for the payment of any Incentive Awards awarded by the Court and for no other purpose; and (iv) the amount of the Settlement Fund in the Expenses Escrow Account

must be used exclusively for the payment of Expenses/Costs as approved by the Court and for no other purpose.

(b)      Expenses/Costs for implementation and/or administration of any trusts or funds associated with the Settlement Fund shall be paid from the Expenses Escrow Account, as approved by the Court.  Additional Expenses/Costs related to the Settlement are expected to be incurred in the future and, if approved by the Court, will be paid through the Expenses Escrow Account.

(c)      Should the Court approve Attorneys' Expenses in an amount less than Class Counsel requests, such a decision shall not constitute grounds for modification or termination of this Agreement, including the Settlement and releases provided for herein.

(d)      Should the Court approve an Incentive Award in an amount less than Class Counsel requests, such a decision shall not constitute grounds for modification or termination of this Agreement, including the Settlement and releases provided for herein.

(e)      Any Unused Funds shall be paid *cy pres* through equal distributions to each of the following organizations: Houston Wilderness, Buffalo Bayou Partnership, Coastal Prairie Conservancy, Galveston Bay Foundation, and Armand Bayou Nature Center.  If any of these organizations are no longer in existence as of the time of any such intended distribution, the Unused Funds shall be distributed equally amongst those identified that are still existing.  No Unused Funds will revert to Defendant or be distributed to the Class.  The Parties agree that, following the completion of the Property Characterization and Remediation Work and the Anonymized Epidemiological Study, *cy pres* distribution is appropriate because any Class Members who did not receive site characterization or remediation or participate in the Anonymized Epidemiological Study chose not to participate in the Settlement, and the Class's claims are fully satisfied by the Settlement.

## IV.   CLASS NOTICE AND SETTLEMENT ADMINISTRATION

4.1.    Subject to Court approval, the Parties have agreed that the manner for providing Class Notice to the Class Members described herein is the best and most fair and reasonable notice practicable under the circumstances.

4.2.    The Parties agree to the following Notice Plan:

(a)      No later than the Notice Date, the Settlement Administrator shall send a copy of the Postcard Notice via First Class U.S. Mail to those Class Members for whom a physical mailing address is available in publicly available parcel data from the Harris County Appraisal District and Chambers County Appraisal District, and that is available commercially from Download Texas GIS Data for Liberty County.  The Settlement Administrator shall use the national change of address database or other appropriate skip-tracing service that includes national change of address data to update the mailing list of the Class Members for whom a mailing address is available, prior to sending Postcard Notice.

(b)      Any mailed Postcard Notices returned to the Settlement Administrator as undelivered and bearing a forwarding address shall be re-mailed by the Settlement Administrator

13

within five (5) business days following receipt of the returned mail.  If no forwarding address is available, and a skip trace has not previously been performed on the Class Member, the Settlement Administrator shall perform a single skip trace using an industry-accepted source, to conduct an address update and send the Postcard Notices to the mailing addresses identified by the skip tracing.

(c)     No later than the Notice Date, the Settlement Administrator also shall launch the Settlement Website to provide information to Class Members.  The Settlement Website shall contain the Notice in both downloadable PDF format and HTML format with a clickable table of contents; answers to frequently asked questions; a Contact Information page that includes the address for the Settlement Administrator and addresses and telephone numbers for Class Counsel; the Agreement; the Preliminary Approval Order; and (when it becomes available) Class Counsel's application for Attorneys' Fees, Attorneys' Expenses, and Incentive Awards.  The Settlement Website shall remain accessible until ninety (90) days after all of the Settlement Funds have been exhausted or distributed *cy pres* as set forth in Section 3.5.e, above.

(d)     <u>CAFA Notice</u>.  Within ten (10) days of entry of the Preliminary Approval Order, the Settlement Administrator shall serve notice of this Settlement to appropriate state and federal officials pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715.  Defendant shall be responsible for drafting and preparing the notice in conformity with 28 U.S.C. § 1715 and for identifying the appropriate state and federal officials, if any, to be notified.

4.3.     The Settlement Administrator shall provide any information or declaration requested by the Parties to assist with seeking Preliminary Approval and/or Final Approval, and shall appear at the Preliminary Approval hearing and/or Final Approval Hearing if requested by the Parties.

4.4.     The Parties each represent that they do not and will not have any financial interest in the Settlement Administrator ultimately appointed and otherwise will not have a relationship with the Settlement Administrator ultimately appointed that could create a conflict of interest.

4.5.     The Parties acknowledge and agree that the Settlement Administrator is not an agent of the Class Representatives, Class Counsel, Defendant, or Defendant's Counsel, and that the Settlement Administrator is not authorized by this Agreement or otherwise to act on behalf of the Class Representatives, Class Counsel, Defendant, or Defendant's Counsel.

4.6.     The Parties shall have the right, but not the obligation, to audit the Property Characterization and Remediation Work and any other work carried out by the Settlement Administrator.

4.7.     If a Class Member requests that the Settlement Administrator and/or his agent or employee refer him/her/it to Class Counsel, or if a Class Member requests advice beyond merely ministerial information regarding applicable deadlines or procedures related to the Settlement for which the Settlement Administrator does not have an approved response, then the Settlement Administrator and/or his agent or employee shall promptly refer the inquiry to Class Counsel.

4.8.     The Parties shall supervise the Settlement Administrator in the performance of the Notice Plan.

4.9.    At the time the Parties apply for Preliminary Approval, the Settlement Administrator shall provide a declaration to the Court to support the Parties' request for appointment of the Settlement Administrator.

4.10.    At least sixty (60) days prior to the Final Approval Hearing, the Settlement Administrator shall certify to the Court that he has complied with the Notice Plan and notice requirements set forth herein.

4.11.    The costs of Notice as set forth in this Part and all costs of the Settlement Administrator shall be paid out of the Settlement Fund—specifically, the Expenses Escrow Account.

4.12.    Upon completion of the implementation and administration of the Settlement, the Settlement Administrator shall provide a declaration to the Parties for filing with the Court, subject to the Parties' review and approval, containing an accounting of the Settlement Fund and the amount of the Settlement Fund, if any, to be distributed *cy pres*.  Fourteen (14) days following the filing of the accounting declaration with the Court, the Settlement Administrator shall distribute any Unused Funds, if any, *cy pres*, consistent with this Agreement and any order of the Court consistent with this Agreement.

## V.    ATTORNEYS' FEES AND INCENTIVE AWARDS

5.1.    Class Counsel may make an application to the Court for an award of Attorneys' Fees as compensation for the time and effort undertaken in this Litigation, but agree that the Attorneys' Fees shall not exceed Eight Million Five Hundred Thousand Dollars ($8,500,000.00). The Attorneys' Fees request shall be for all claims for Attorneys' Fees, past, present, and future incurred in connection with the Litigation or this Agreement, and Class Counsel shall not be permitted to make a second application to the Court for an award of Attorneys' Fees.  Any Attorneys' Fees approved by the Court that do not exceed $8,500,000.00 shall be paid to Class Counsel by Defendant on the Effective Date.  Class Counsel has no right to payment of Attorneys' Fees in an amount exceeding $8,500,000.00.  No Attorneys' Fees shall be paid from the Settlement Fund, and no Attorneys' Fees shall take away from or otherwise reduce the relief available to the Class.

5.2.    Class Counsel may make an application to the Court for an award of Attorneys' Expenses.  The Attorneys' Expenses request shall be for all claims for Attorneys' Expenses, past, present, and future incurred in connection with the Litigation or this Agreement, and Class Counsel shall not be permitted to make a second application to the Court for an award of Attorneys' Expenses.  Any Attorneys' Expenses approved by the Court shall be paid from the Settlement Fund, specifically, the Expenses Escrow Account, on the Effective Date.

5.3.    Defendant covenants and agrees on behalf of itself and the Released Parties that, provided that Class Counsel's application for Attorneys' Fees and Attorneys' Expenses is consistent with Sections 5.1 and 5.2, above, it and the Released Parties shall not (a) oppose or submit any evidence or argument challenging Class Counsel's application for Attorneys' Fees and Attorneys' Expenses; (b) encourage or assist any person to oppose or submit any evidence or argument challenging Class Counsel's application for Attorneys' Fees and Attorneys' Expenses;

or (c) encourage or assist any person to appeal from an order awarding Attorneys' Fees or Attorneys' Expenses.

5.4.    Payment of any Attorneys' Fees approved by the Court to Class Counsel and the funding of the Expenses Escrow Account shall constitute full satisfaction by Defendant of any claim to pay any amounts to any person, attorney, or law firm for attorneys' fees, expenses, or costs in the Litigation incurred by any attorney on behalf of Plaintiffs or the Class, and shall relieve Defendant and Defendant's Counsel of any other claims or liability to any other attorney or law firm for any attorneys' fees, expenses, and/or costs to which any of them may claim to be entitled on behalf of Plaintiffs or the Class, or as the result of this Litigation or Agreement.

5.5.    Class Counsel may make an application to the Court for an Incentive Award in a collective amount not to exceed a total of Two Hundred Thousand Dollars ($200,000), as compensation for the Class Representatives' time and effort undertaken in this Litigation pursuing the interests of the Class for nearly six years.  The Incentive Award request shall be for all Incentive Awards, past, present, and future, that the Class Representatives and Class Counsel claim to be proper in connection with the Litigation or this Agreement, and Class Counsel shall not be permitted to make a second application to the Court for an Incentive Award.  Any Incentive Award approved by the Court shall be paid from the Settlement Fund, specifically, the Incentive Awards Escrow Account, on the Effective Date.

5.6.    Defendant covenants and agrees on behalf of itself and the Released Parties that, provided Class Counsel's application for an Incentive Award is consistent with Section 5.5, above, it and the Released Parties shall not (a) oppose or submit any evidence or argument challenging Class Counsel's application for an Incentive Award; (b) encourage or assist any person to oppose or submit any evidence or argument challenging Class Counsel's application for an Incentive Award; or (c) encourage or assist any person to appeal from an order making an Incentive Award.

5.7.    An Incentive Award consistent with Section 5.5, above, shall be the total obligation of Defendant to pay money to Plaintiffs in connection with the Litigation and this Settlement.

5.8.    Class Counsel and the Class Representatives agree that the denial of, reduction, or downward modification of, or failure to grant any application for Attorneys' Fees, Attorneys' Expenses, or Incentive Award shall not constitute grounds for modification or termination of this Agreement, including the Settlement and releases provided for herein.

5.9.    Except as set forth in this Agreement, each Party shall bear his or its own fees, costs, and expenses.

## VI.    CLASS SETTLEMENT PROCEDURES

6.1.    <u>Preliminary Approval</u>.  As soon as practicable after the signing of this Agreement, Plaintiffs shall move, without opposition from the Defendant, solely for purposes of this Settlement, for a Preliminary Approval Order, substantially in the form of Exhibit 1.  The Parties shall seek with the Court to schedule a Final Approval Hearing to occur approximately one hundred thirty (130) days after the Preliminary Approval.

6.2.    Objections.    The Preliminary Approval Order and Class Notice shall advise prospective Class Members of their rights to object to this Settlement individually or through counsel and to appear at the Final Approval Hearing.

6.3.    Class Members who wish to object to the fairness, reasonableness, or adequacy of the Settlement or this Agreement, any request for Attorneys' Fees or Attorneys' Expenses, or any request for an Incentive Award shall submit a written notice of objection in accordance with the following procedures:

(a)    Class Members who wish to object must submit a written statement of objection to the Clerk of Court, United States District Court for the Southern District of Texas, 515 Rusk Avenue, Houston, TX 77002, postmarked or filed via the Court's electronic filing system (ECF), on or before the Objection Deadline.

(b)    To be valid, an objection must include: (a) a reference to this case, *Shannan Wheeler, et al. v. Arkema Inc.*, Case No. 4:17-2960-KPE (S.D. Tex), and the name of the presiding Judge, the Hon. Keith P. Ellison; (b) the name, address, telephone number, and, if available, the email address of the Class Member objecting, and if represented by counsel, their counsel's name, address, telephone number, email, and bar number; (c) a written statement of all grounds for the objection, accompanied by any legal support for such objection; (d) a statement of whether they intend to appear at the Final Approval Hearing, either with or without counsel; (e) a statement of their membership in the Class; (f) a detailed list of any other objections submitted by the Class Member, or their counsel, to any class actions submitted in any court, whether state or otherwise, in the United States in the previous five (5) years; and (g) the Class Member's signature, even if the objection is submitted through counsel.  If the Class Member or their counsel has not objected to any other class action settlement in any court in the United States in the previous five (5) years, they shall affirmatively state so in the written materials provided in connection with the objection to this Settlement.  This information is material to the Court's consideration of the Settlement; failure to include this information and documentation may be grounds for overruling and rejecting the objection.  Any Class Member who fails to timely submit a written objection prior to the Objection Deadline shall be deemed to have waived their objections, and those objections will not be considered by the Court.

(c)    Any Class Member shall have the right to appear and be heard at the Final Approval Hearing, either personally or through an attorney retained at the Class Member's own expense.  However, if the Class Member wishes to object to the Settlement Agreement at the Final Approval Hearing (either personally or through counsel), the Class Member must submit a timely written objection in compliance with the requirements in this Agreement.  In addition, to appear in person or by counsel at the Final Approval Hearing, the objecting Class Member must include in their objection a Notice of Intention to Appear.  The Notice of Intention to Appear must include copies of any papers, exhibits, or other evidence that the objecting Class Member (or their counsel) will present to the Court in connection with the Final Approval Hearing.  Any Class Member who fails to submit a proper Notice of Intention to Appear will not be heard during the Final Approval Hearing.  Class Members do not need to appear at the Final Approval Hearing or take any other action to indicate their approval of the Settlement Agreement.

(d)      Any Class Member who submits a written objection shall be bound by all terms of the Settlement and the Final Approval Order and Final Judgment if the Settlement is approved by the Court.

(e)      Class Counsel shall serve on Defendant's Counsel and file with the Court any responses to written objections to the Settlement received within fifteen (15) days following the Objection Deadline.

6.4.    <u>Final Approval and Judgment</u>.    After Preliminary Approval, Class Notice is provided to the Class Members, and the expiration of the Objection Deadline, a Final Approval Hearing shall be held on a date set by the Court.  Class Counsel shall request that the Court enter the Final Approval Order, substantially in the form of Exhibit 4.

6.5.    <u>Conditions Impacting Finality of Settlement</u>.

(a)      The Parties expressly agree that in the event of any of the following conditions: (i) the Court does not preliminarily approve the Settlement; (ii) the Court does not finally approve the Settlement; (iii) the Court does not enter the Final Approval Order and Final Judgment; (iv) the Court makes any modification to the Settlement not agreed to by both Parties (including by conditioning the Preliminary Approval Order or Final Approval Order on any change not agreed to by both Parties)—except with respect to any rulings on Attorneys' Fees, Attorneys' Expenses, or Incentive Award; (v) the Preliminary Approval Order or Final Approval Order is vacated, modified, or reversed, in whole or in part—except with respect to any rulings on any Attorneys' Fees, Attorneys' Expenses, or Incentive Award; and/or (vi) this Settlement does not become final for any reason; then this Agreement shall be null and void *ab initio* and any order entered by the Court in furtherance of this Settlement shall be treated as withdrawn or vacated by stipulation of the Parties, and Defendant shall have no further obligation under this Agreement.

(b)      If any of the conditions outlined in Section 6.5.a, above, occur such that this Settlement does not become final, the Parties shall proceed in all respects as if this Agreement had not been executed; provided, however, that Class Counsel shall be responsible for the payment of reasonable Administration Costs actually incurred for services already performed up to such time. Notwithstanding the foregoing, the denial of, an appeal of, a modification of, or a reversal on appeal of any Attorneys' Fees, Attorneys' Expenses, or Incentive Award shall not constitute grounds for cancellation or termination of this Agreement.

(c)      If Preliminary Approval of Final Approval is denied, the Parties immediately shall be returned to their respective statuses as of the date immediately prior to the execution of this Agreement.

6.6.    <u>Effect if Settlement Not Approved or Agreement is Terminated</u>.  This Agreement is entered into only for purposes of settlement.  In the event that Preliminary Approval or Final Approval of this Agreement does not occur for any reason, including without limitation termination of this Agreement pursuant to Section 6.5.a, or if Final Approval is reversed on appeal, then no term or condition of this Agreement, or any draft thereof, or discussion, negotiation, documentation, or other part or aspect of the Parties' settlement discussions shall have any effect. Nor shall any such matter be used or referred to for any purposes whatsoever in the Litigation, or

18

in any other proceeding; the Litigation may continue as if the Settlement had not occurred; and the Parties shall be returned to their pre-Settlement litigation posture.  The Parties agree that all drafts, discussions, negotiations, documentation, or other information prepared in relation to this Agreement, and the Parties' settlement discussions, shall be treated as strictly confidential and may not, absent a court order, be disclosed to any person other than the Parties' counsel, and only for purposes of the Litigation.

## VII.   RELEASES

7.1.   <u>Releases Regarding Class Representatives</u>.  Upon Final Approval, the Class Representatives (for purposes of this Part VII, "Class Representatives" includes any Class Representative and all other persons acting or purporting to act on their behalf, including but not limited to his/her relatives, executors, heirs, successors, agents, and assigns) shall have unconditionally, completely, and irrevocably released and forever discharged the Released Parties from and shall be forever barred from instituting, maintaining, or prosecuting any and all claims, liens, demands, actions, causes of action, rights, duties, obligations, damages, or liabilities of any nature whatsoever, whether legal or equitable or otherwise, known or unknown, that actually were, or could have been, asserted in the Litigation, whether based upon any violation of any state or federal statute or common law or regulation or otherwise, that arise directly or indirectly out of, or in any way relate to the Litigation or the Allegations.

7.2.   <u>Releases Regarding Class Members and Released Parties</u>.  Upon Final Approval, Class Members other than the Class Representatives, and all other persons acting or purporting to act on a Class Member's behalf, including but not limited to the Class Member's parent, child, heir, guardian, associate, co-owner, attorney, agent, administrator, executor, devisee, predecessor, successor, assignee, assigns, representative of any kind, shareholder, partner, director, employee or affiliate, shall have unconditionally, completely, and irrevocably released and discharged the Released Parties from any and all claims, liens, demands, actions, causes of action, rights, duties, obligations, or liabilities, known or unknown, that arise directly or indirectly out of, or in any way relate to the Litigation or the Allegations that (1) seek injunctive, declaratory, equitable, or other non-monetary relief, of any nature whatsoever arising under any legal theory or claim whatsoever, whether by common law, statute, or otherwise; (2) arise under the Resource Conservation and Recovery Act or Comprehensive Environmental Response, Compensation, and Liability Act; and/or (3) are brought in a representative or collective capacity, of any nature whatsoever arising under any legal theory or claim whatsoever, whether by common law, statute, or otherwise, seeking any relief of any nature whatsoever.  Upon Final Approval, Class Members shall be forever barred from initiating, maintaining, or prosecuting any Released Claims against the Released Parties.

7.3.   <u>Waiver of Provisions of California Civil Code Section 1542</u>.  The Class Representatives shall, by operation of the Final Approval Order and Final Judgment, be deemed to have waived the provisions, rights, and benefits of California Civil Code Section 1542, and any similar law of any state or territory of the United States or principle of common law.  In addition, Class Members shall, by operation of Final Approval and Judgment, be deemed to have waived the provisions, rights and benefits of California Civil Code Section 1542, and any similar law of any state or territory of the United States or principle of common law, but only with respect to the matters released as set forth in Section 7.2, above.  California Civil Code Section 1542 provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

The Class Representatives and Class Members shall, by operation of the Final Approval Order and Final Judgment, be deemed to assume the risk that facts additional, different, or contrary to the facts that each believes or understands to exist, may now exist, or may be discovered after the release set forth in this Agreement becomes effective, and the Parties and Class Members shall, by operation of the Final Approval Order and Final Judgment, be deemed to have agreed that any such additional, different, or contrary facts shall in no way limit, waive, or reduce the foregoing releases, which shall remain in full force and effect.

7.4.    Dismissal of Keith Lyons and Greg Nason's Non-Released Claims Without Prejudice.  Except for the claims released in Section 7.2 above, the claims of Keith Lyons and Greg Nason set forth in Plaintiffs' Second Amended Complaint shall be dismissed without prejudice as part of the Final Judgment.

7.5.    Effectuation of Settlement.  None of the above releases include releases of claims to enforce the terms of the Settlement provided for in this Agreement.  This Agreement is the sole and exclusive remedy for any and all Released Claims.

7.6.    Covenant Not to Sue.  Plaintiffs agree and covenant not to sue any Released Parties with respect to any of the Released Claims set forth in Section 7.1, or otherwise to assist others in doing so, and agree to be forever barred from doing so, in any court of law or equity, or any other forum.  Each Class Member will be deemed to have agreed and covenanted not to sue any Released Parties with respect to any of the Released Claims as set forth in Section 7.2, and agree to be forever barred from doing so, in any court of law or equity, or any other forum.

7.7.    No Admission of Liability.  This Agreement reflects, among other things, the compromise and settlement of disputed claims among the Parties hereto, and neither this Agreement nor the releases given herein, nor any consideration therefore, nor any actions taken to carry out this Agreement are intended to be, nor may they be deemed or construed to be, an admission or concession of liability, or the validity of any claim, or defense, or of any point of fact or law (including but not limited to matters respecting class certification) on the part of any Party. Defendant expressly denies the Allegations.  Neither this Agreement, nor the fact of settlement, nor the settlement proceedings, nor settlement negotiations, nor any related document, shall be used as an admission of any fault or omission by the Released Parties, or be offered or received in evidence as an admission, concession, presumption, or inference of any wrongdoing by the Released Parties in any proceeding, except that this Agreement may be offered or received in evidence in such proceedings as may be necessary to consummate, interpret, or enforce this Agreement.

## VIII.   ADDITIONAL PROVISIONS

8.1.    No Collateral Attack.  This Agreement shall not be subject to collateral attack by any Class Members or their representatives any time on or after the Effective Date.  Prohibited

collateral attacks shall include, but are not limited to, assertions that a Class Member's claim should have been heard or decided by another forum or that a Class Member's claim was improperly denied.

      8.2.   <u>Non-Disparagement</u>.  The Parties, Class Counsel, and Defendant's Counsel agree that they will not make or cause to be made any statements that disparage Plaintiffs, Defendant or its employees, or any of the other Released Parties.  The Parties, Class Counsel, and Defendant's Counsel also agree that they will not encourage any person to disparage Plaintiffs, Defendant or its employees, or any of the other Released Parties.  Disparagement includes, but is not limited to, statements made by an Internet posting or use of social media.  Disparagement does not include statements that recite or refer to the Allegations of the Lawsuit or terms of the Agreement.  Nor does it include any good-faith claim or allegation of a legal violation in the future.

      8.3.   <u>Cooperation</u>.  All of the Parties, their successors and assigns, and their attorneys agree to work reasonably and cooperatively in order to obtain Court approval of this Agreement and to effectuate the Settlement, and to provide declarations to facilitate the Court's Preliminary Approval and Final Approval of the Settlement.  The Parties further agree to cooperate in the Settlement administration process and implementation of the Settlement and to make all reasonable efforts to control and minimize the costs and expenses incurred in the administration and implementation of the Settlement.

      8.4.   <u>Change of Time Periods</u>.   The time periods and/or dates described in this Agreement with respect to the giving of notices and hearings are subject to approval and change by the Court or by the written agreement of Class Counsel and Defendant's Counsel.  For the avoidance of doubt, any change to the time periods and/or dates described in this Agreement with respect to the giving of notices and hearings is not a condition impacting finality of settlement within the scope of Section 6.5(a).

      8.5.   <u>Time for Compliance</u>.  If the date for performance of any act required by or under this Agreement falls on a Saturday, Sunday, or court holiday, that act may be performed on the next business day with the same effect as if it had been performed on the day or within the period of time specified by or under this Agreement.

      8.6.   <u>Governing Law</u>.  This Agreement is intended to and shall be governed by federal law and the laws of the State of Texas, without regard to conflicts of law principles.

      8.7.   <u>Entire Agreement</u>.  The terms and conditions set forth in this Agreement and its exhibits constitute the complete and exclusive statement of the agreement between the Parties hereto relating to the subject matter of this Agreement, superseding all previous negotiations and understandings, and may not be contradicted by evidence of any prior or contemporaneous agreement.  The Parties further intend that this Agreement constitutes the complete and exclusive statement of its terms as between the Parties, and that no extrinsic evidence whatsoever may be introduced in any agency or judicial proceeding, if any, involving the interpretation of this Agreement.  In executing this Agreement, the Parties acknowledge that they have not relied upon any oral or written understandings, negotiations, agreements, statements, or promises that are not set forth in this Agreement.  The Parties also acknowledge and agree that each has been represented by their own counsel with respect to the negotiating and drafting of this Settlement and this

Agreement.  All exhibits to this Agreement as set forth herein are integrated herein and are to be considered terms of this Agreement as if fully set forth herein.

      8.8.    <u>Modifications</u>.  Any amendment or modification of the Agreement must be in writing signed by all of the Parties to this Agreement or their counsel.  The Parties agree that nonmaterial amendments or modifications to this Agreement may be made in writing after Preliminary Approval without the need to seek the Court's approval.  If the Court indicates, prior to the Preliminary Approval or Final Approval, that the Settlement will not be approved unless certain changes are made, the Parties will attempt in good faith to reach an agreement as to any such changes prior to withdrawing from this Agreement.  However, all modifications are at the absolute discretion of the Parties.  Further, if no such agreement can be reached within thirty (30) days after the Court indicates that the Settlement will not be approved unless certain changes are made, then the Class Representatives or Defendant may terminate and withdraw from this Agreement, pursuant to Section 6.5(a).  Notwithstanding the foregoing, the denial of, an appeal of, a modification of, or a reversal on appeal of any Attorneys' Fees, Attorneys' Expenses, or Incentive Award shall not constitute grounds for cancellation or termination of this Agreement.  Without further order of the Court, the Parties may agree in writing to reasonable extensions of time to carry out any of the provisions of this Agreement or the Preliminary Approval Order.  The Court has no power to make any modification whatsoever to this Agreement without the express, written consent of both Parties.

      8.9.    <u>No Admissions</u>.  If this Agreement does not become effective or is cancelled, withdrawn, or terminated for any reason, including as set forth in Section 6.5(a), it shall be deemed a negotiation for settlement purposes only and will not be admissible in evidence or usable for any purposes whatsoever in the Litigation or any proceedings between the Parties or in any other action related to the Released Claims or otherwise involving the Parties or any Released Parties.  Nothing in this Agreement may be construed as, or may be used as, an admission by the Class Representatives that any of their claims are without merit.  Nothing in this Agreement may constitute, may be construed as, or may be used as an admission by Defendant of any fault, wrongdoing, or liability whatsoever, or that class certification is appropriate.  Defendant continues to affirmatively deny all liability and all of the claims, contentions, Released Claims, and each and every allegation made by the Class Representatives in the Litigation.

      8.10.    <u>Advice of Counsel</u>.  The terms of this Agreement have been arrived at by mutual agreement after extensive arm's-length, bilateral negotiations, with consideration by and participation of all Parties and their counsel.  The presumption found in the law that uncertainties in contracts are interpreted against the party that drafted the contract is hereby waived by all Parties.

      8.11.    <u>No Tax Advice</u>.  Neither Class Counsel nor Defendant's Counsel intends anything contained herein to constitute legal advice regarding the tax consequences of any amount paid hereunder; nor shall it be relied upon as such.

      8.12.    <u>Tax Forms</u>.  Notwithstanding anything else in this Agreement, Defendant shall have no obligation to pay any Attorneys' Fees to Class Counsel, and the Settlement Administrator shall have no obligation to pay any Attorneys' Expenses to Class Counsel or Incentive Award to

Plaintiffs, unless Class Counsel and Plaintiffs have provided Defendant and Settlement Administrator with a complete and correct IRS W-9 tax forms.

    8.13.  <u>Conflicts</u>.  In the event of a conflict between this Agreement and any other document prepared pursuant to the Settlement, the terms of this Agreement supersede and control.

    8.14.  <u>No Waiver</u>.  Any failure by any Party to insist upon the strict performance by any other Party of any provision of this Agreement shall not be deemed a waiver of any provision of this Agreement and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

    8.15.  <u>Warranties</u>.  Each signatory to this Agreement hereby warrants that he/she/it has the authority to execute this Agreement and thereby bind the respective Party.  The Class Representatives warrant and represent that they are the sole and lawful owners of all rights, title, and interest in and to all of the Released Claims and that they have not, by operation of law or otherwise, sold, assigned, or transferred or purported to sell, assign, or transfer to any other person or entity any Released Claims or any part or portion thereof.

    8.16.  <u>Binding Effect of the Agreement</u>.  This Agreement shall be valid and binding as to the Parties and their respective heirs, legal representatives, executors, administrators, successors, and assigns upon signing by all Parties.

    8.17.  <u>Execution in Counterparts</u>.  This Agreement shall become effective upon its execution by all of the undersigned.  The Parties may execute this Agreement in counterparts and/or by fax or electronic mail, and execution of counterparts shall have the same force and effect as if all Parties had signed the same instrument.

    8.18.  <u>Enforcement of this Agreement</u>.  If the Court grants Final Approval, it shall enter Final Judgment.  The Court shall retain jurisdiction solely to enforce, interpret, and implement this Agreement.

    8.19.  <u>Notices</u>.  All notices to the Parties or counsel required by this Agreement shall be made in writing and communicated by mail and email to the following addresses:

    If to Plaintiffs or Class Counsel:

    Mike Stag and Ashley Liuzza
    Stag Liuzza
    365 Canal St #2850
    New Orleans, LA 70130
    Telephone: (504) 593-9600
    Email: mstag@stagliuzza.com
    Email: aliuzza@stagliuzza.com

    If to Defendant or Defendant's Counsel:

    Thomas E. Birsic and Jackie S. Celender
    K&L Gates LLP

210 Sixth Avenue
Pittsburgh, PA 15222
Telephone: (412) 355-6500
Email: thomas.birsic@klgates.com
Email: jackie.celender@klgates.com

8.20.   <u>Confidentiality</u>.

(a)     The Parties, Class Counsel, and Defendant's Counsel agree to keep the existence and contents of this Agreement confidential until the filing of the motion for Preliminary Approval.  All other settlement communications shall remain confidential.  This provision will not prevent the disclosure of the Agreement prior to the filing of the motion for Preliminary Approval with the Court to (1) the Released Parties, the Released Parties' independent accountants, the Released Parties' existing or potential insurers or reinsurers, experts retained for the purposes of this Litigation, or any existing or potential investor of or any existing or potential lender to any of the Released Parties; (2) the Settlement Administrator; and/or (3) any person or entity that the Parties agree in writing must have access to it in order to effectuate the Settlement.

(b)     Nothing in this Agreement will be construed to prohibit communications between Defendant and any of the other Released Parties about the Settlement or any related topic.

(c)     If contacted by a Class Member regarding their rights under this Agreement, any Released Parties shall refer the Class Member to Class Counsel.  At no time shall any of the Parties or their counsel or their agents seek to solicit Class Members or any other persons to submit written objections to the Settlement; discourage Class Members from participating in the Property Characterization/Remediation Work or the Anonymized Epidemiological Survey under the Settlement; or encourage Class Members or any persons to appeal from the Preliminary Approval Order and/or the Final Approval Order and Final Judgment.  Except for the limitations on communications set forth in this Section 8.20.c, Released Parties may continue to communicate with Class Members in the regular and ordinary course of business.

(d)     The Class Representatives and Class Counsel agree that the discussions and the information exchanged in the course of negotiating this Agreement are confidential and were made available on the condition that they not be disclosed to third parties (other than experts or consultants retained by Class Counsel in connection with the Litigation), that they not be the subject of public comment, and that they not be publicly disclosed or used by the Class Representatives or Class Counsel in any way in the Litigation or in any other proceeding.

8.21.   <u>Confidential Documents</u>.  The Parties reaffirm their obligation to comply with the Agreed Protective Order (Dkt. No. 77) regarding confidential information.  Class Counsel are entitled to retain an archival copy of the entire file (paper and/or electronic), including all pleadings, motion papers, transcripts, legal memoranda, correspondence, discovery, expert reports and exhibits thereto, and attorney work product, even if such materials contain material designated as confidential, provided that Class Counsel complies with all aspects of the Agreed Protective Order (Dkt. No. 77), until 30 months after the Effective Date.  Thirty months after the Effective Date, Class Counsel shall destroy all copies of material designated as confidential, whether hard-copy or electronic.

8.22.   <u>Exhibits</u>. The Exhibits to the Agreement are an integral part of the Settlement and are hereby incorporated and made part of the Agreement.

8.23.   <u>Complete Resolution</u>. The Parties intend for this Agreement to be a complete and final resolution of all disputes between them with respect to the Litigation.

**APPROVED AND AGREED:**

BY PLAINTIFFS:                                      BY ARKEMA INC.

Larry Anderson

William J. Hamel
Senior Vice President & General Counsel
Arkema Inc.

Tanya Anderson

Bevely Flannel

Roland Flannel

Corey Prantil

Betty Whatley

Bret Simmons

Phyllis Simmons

26

**APPROVED AND AGREED:**

BY PLAINTIFFS:                                    BY ARKEMA INC.


_____                          _____
Larry Anderson                                    William J. Hamel
                                                  Senior Vice President & General Counsel
                                                  Arkema Inc.


_____
Tanya Anderson


_____
Bevely Flannel


_____
Roland Flannel


_____
Corey Prantil


_____
Betty Whatley


_____
Bret Simmons


_____
Phyllis Simmons

26

**APPROVED AND AGREED:**

BY PLAINTIFFS:                                    BY ARKEMA INC.

DocuSigned by:

*William J. Hamel*
—401130D1EF94C41C...

_____             _____
Larry Anderson                                    William J. Hamel
                                                  Senior Vice President & General Counsel
                                                  Arkema Inc.



_____
Tanya Anderson



_____
Bevely Flannel



_____
Roland Flannel



_____
Corey Prantil



_____
Betty Whatley



_____
Bret Simmons



_____
Phyllis Simmons

**APPROVED AS TO FORM:**

BY CLASS COUNSEL:

_____
Michael Stag
Stag Liuzza
Lead Attorney and Class Counsel

_____
Ashley Liuzza
Stag Liuzza
Class Counsel

_____
Van Bunch
Bonnett Fairbourn Friedman &
Balint PC
Class Counsel

_____
Mark Underwood
Underwood Law Offices
Class Counsel

_____
Kevin Thompson
Thompson Barney
Class Counsel

BY DEFENDANT'S COUNSEL:

DocuSigned by:

*Thomas E. Birsic*
_____
105396457D544C3...
Thomas Birsic
K&L Gates LLP
Lead Attorney for Arkema Inc.

# **Exhibit 1**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| SHANNAN WHEELER, *et al.*,<br><br>     *Plaintiffs*,<br><br>  v.<br><br>ARKEMA INC.,<br><br>     *Defendant*. | CIVIL ACTION<br><br>Case No. 4:17-cv-2960<br><br>Hon. Keith P. Ellison |

**ORDER AMENDING CLASS DEFINITION, GRANTING**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, APPROVING**
**<u>CLASS NOTICE, AND SETTING DATE FOR FINAL APPROVAL HEARING</u>**

The Court, having considered Plaintiffs' Unopposed Motion to Grant Preliminary Approval of the Class Action Settlement, Defendant's lack of opposition and agreement with the relief requested, the pleadings on file, and all other relevant matter, determines that the motion should be **GRANTED**. It is **HEREBY ORDERED**:

1.    **Capitalized Terms:** The capitalized terms used in this Preliminary Approval Order shall have the same meaning as defined in the Settlement Agreement, except as otherwise expressly provided.

2.    **Certification of the Class:** Following a five-day evidentiary hearing, this Court granted in part Plaintiffs' Renewed Motion for Class Certification and certified a class for property remediation and medical surveillance under Federal Rule of Civil Procedure 23(b)(2) defined as follows: "All residents and real property owners located within a 7-mile radius of the Crosby, Texas, Arkema Chemical Plant." Dkt. No. 316 at 111.

3.    **Amendment of Class Definition:** For the reasons stated in Plaintiffs' unopposed motion, the Court hereby amends the definition of the Rule 23(b)(2) class certified for property

remediation and medical surveillance. *See In re Monumental Life Ins. Co.*, 365 F.3d 408, 414 (5th Cir. 2004) ("District courts are permitted to limit or modify class definitions to provide the necessary precision."); *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify [the class definition] in light of subsequent developments in the litigation. For such an order, particularly during the period before any notice is sent to members of the class, is inherently tentative." (internals omitted)); FED. R. CIV. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."). The amended Class definition is as follows: "All residents and real property owners located within a 7-mile radius of the Crosby, Texas, Arkema Inc. Chemical Plant since August 30, 2017." Excluded from the class are (a) the Honorable Keith P. Ellison and the Honorable Dena Palermo, any member of their staff who worked directly on this Litigation, and any member of their immediate families; (b) counsel for the Parties, any member of their respective staff who worked directly on this Litigation, and any member of their immediate families; (c) any government entity; (d) any entity or real property in which Defendant has a controlling interest; and (e) any of Defendant's subsidiaries, parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns.

4.      **Limited Purpose of Amended Class Definition:** This amendment of the Class definition is solely for the purpose of effectuating the Settlement Agreement. If the Settlement Agreement is terminated or not consummated for any reason, the amended Class definition shall be null and void and of no further effect with respect to any Party to this Litigation, and the Parties to the Settlement Agreement shall be returned to the status each occupied before entry of this Preliminary Approval Order without prejudice to any legal argument or right that any of the Parties to the Settlement Agreement might have asserted but for the Settlement Agreement.

5.    **Class Counsel:** Michael G. Stag and Ashley Liuzza and the law firm of Stag Liuzza, LLC; Van Bunch and the law firm of Bonnett Fairbourn Friedman & Balint, P.C.; Mark F. Underwood and the law firm of Underwood Law Offices; and Kevin W. Thompson and the law firm of Thompson Barney shall continue to serve as Class Counsel, and shall act on behalf of the Class Representatives and all members of the Class.

6.    **Class Representatives:** Corey Prantil, Betty Whatley, Bevely Flannel, Roland Flannel, Larry Anderson, Tanya Anderson, Bret Simmons, and Phyllis Simmons shall serve as Class Representatives.

7.    **Preliminary Approval of the Settlement:** The Court hereby preliminarily approves the Settlement Agreement and finds, pursuant to Federal Rule of Civil Procedure 23(e), that it likely will be able to grant Final Approval of the Settlement Agreement as being fair, reasonable, and adequate to the Class, subject to further consideration at the Final Approval Hearing. Considering the factors set forth in Rule 23(e)(2), the Court preliminarily finds as follows:

        a.    The Class Representatives and Class Counsel have adequately represented the Class.

        b.    The Settlement Agreement was negotiated at arm's length.

        c.    The relief provided to the Class in the Settlement Agreement is adequate, given the risks and uncertainty of trial.

        d.    The Settlement Agreement treats all Class Members equally relative to each other.

8.    **Approval of the Class Notice and Notice Plan:** The Court approves the form and substance of the Class Notice and the Notice Plan set forth in the Settlement Agreement for

notifying the Class of the Settlement Agreement. The Court finds that the Class Notice clearly and accurately informs all members of the Class of all material terms of the Settlement Agreement, meets the requirements of due process, Federal Rule of Civil Procedure 23, and all other applicable laws, and constitutes the best notice practicable under the circumstances. The Parties shall have discretion to jointly make non-material, minor revisions to the Class Notice.

9. **Retention of Settlement Administrator for Class Notice:** The Court approves the appointment of Edgar C. Gentle, III, as the Settlement Administrator for the limited and sole purpose of causing the Class Notice to be distributed to the Class and published, pursuant to the Notice Plan in the Settlement Agreement, subject to the oversight of the Parties and this Court as described in the Settlement Agreement.

10. **Cost of Notice:** As provided in the Settlement Agreement, all Administrative Costs incurred in carrying out the Notice Plan shall be paid from the Expenses Escrow Account, and in no event shall any of the Released Parties bear any responsibility or liability for such Administrative Costs.

11. **CAFA Notice:** As provided in the Settlement Agreement, the Settlement Administrator shall effect service of the notice required under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1715, *et seq.*, no later than ten (10) calendar days following the entry of this Preliminary Approval Order. The fees, costs, and expenses of the CAFA notice and administering the CAFA notice shall be paid out of the Expenses Escrow Account. No later than seventy (70) calendar days after Preliminary Approval, the Settlement Administrator shall cause to be served on Class Counsel and filed with the Court proof, by affidavit or declaration, regarding compliance with 28 U.S.C. § 1715(b).

12. **Appearance of Class Members:** Any Class Member may enter an appearance in the Lawsuit, at their expense, individually or through counsel of their own choice. If any Class Member does not enter an appearance, they will be represented by Class Counsel.

13. **Form of Objections:** Class Members who wish to object must submit a written statement of objection to the Clerk of Court, United States District Court for the Southern District of Texas, 515 Rusk Avenue, Houston, TX 77002, postmarked or filed via the Court's electronic filing system (ECF), on or before the Objection Deadline. To be valid, an objection must include: (a) a reference to this case, *Shannan Wheeler, et al. v. Arkema Inc.*, Case No. 4:17-2960-KPE (S.D. Tex), and the name of the presiding Judge, the Hon. Keith P. Ellison; (b) the name, address, telephone number, and, if available, the email address of the Class Member objecting, and if represented by counsel, their counsel's name, address, telephone number, email, and bar number; (c) a written statement of all grounds for the objection, accompanied by any legal support for such objection; (d) a statement of whether they intend to appear at the Final Approval Hearing, either with or without counsel; (e) a statement of their membership in the Class; (f) a detailed list of any other objections submitted by the Class Member, or their counsel, to any class actions submitted in any court, whether state or otherwise, in the United States in the previous five (5) years; and (g) the Class Member's signature, even if the objection is submitted through counsel. If the Class Member or their counsel have not objected to any other class action settlement in any court in the United States in the previous five (5) years, they shall affirmatively state so in the written materials provided in connection with the objection to this Settlement. This information is material to the Court's consideration of the Settlement; failure to include this information and documentation may be grounds for overruling and rejecting the objection. Any Class Member who fails to timely submit a written objection prior to the Objection Deadline

5

shall be deemed to have waived their objections, and those objections will not be considered by the Court.

14. **Appearance and Objection at the Final Approval Hearing:** Any Class Member shall have the right to appear and be heard at the Final Approval Hearing, either personally or through an attorney retained at the Class Member's own expense. However, if the Class Member wishes to object to the Settlement Agreement at the Final Approval Hearing (either personally or through counsel), the Class Member must submit a timely written objection in compliance with the requirements in this Preliminary Approval Order. In addition, to appear in person or by counsel at the Final Approval Hearing, the objecting Class Member must include in their objection a Notice of Intention to Appear. The Notice of Intention to Appear must include copies of any papers, exhibits, or other evidence that the objecting Class Member (or their counsel) will present to the Court in connection with the Final Approval Hearing. Any Class Member who fails to submit a proper Notice of Intention to Appear will not be heard during the Final Approval Hearing. Class Members do not need to appear at the Final Approval Hearing or take any other action to indicate their approval of the Settlement Agreement.

15. **Failure to Object:** Any Class Member who does not object to the Settlement or Class Counsel's application for an award of Attorneys' Fees, Attorneys' Expenses, and/or an Incentive Award in the manner prescribed herein shall be deemed to have waived such objection, and shall forever be foreclosed from making any objection to the fairness, adequacy, or reasonableness of the Settlement, this Preliminary Approval Order, the Final Approval Order, and the Final Judgment to be entered approving the Settlement and/or the application by Class Counsel for an award of Attorneys' Fees, Attorneys' Expenses, and/or an Incentive Award.

16.     **Settlement Procedures and Timeline:** The following settlement procedures and timeline will be followed:

a.      **Notice Date.** By _____, 202__ (30 days after Preliminary Approval), the Settlement Administrator shall send the Class Notice to Class Members pursuant to the Notice Plan set forth in the Settlement Agreement.

b.      By _____, 202__ (70 days after Preliminary Approval), the Settlement Administrator shall file a declaration confirming compliance with the Notice Plan set forth in the Settlement Agreement.

c.      **Objection Deadline.** All objections to the Settlement Agreement shall be filed by _____, 202__ (90 days after Preliminary Approval).

d.      All replies in support of Final Approval or for any award of Attorneys' Fees, Attorneys' Costs, or an Incentive Award (including responses to objections) must be filed by Plaintiffs by _____, 202__ (105 days after Preliminary Approval). All such filings and supporting documentation shall be posted to the Settlement Website within one day of filing.

e.      **Final Approval Hearing.** The Court shall hold the Final Approval Hearing for final approval of the settlement on _____, 202__ (at least 130 days after Preliminary Approval), at __:____ __.m. to address: (i) whether the Settlement Agreement should be finally approved as fair, reasonable, and adequate, and whether the Final Approval Order should be entered; and (ii) whether Class Counsel's application for Attorneys' Fees, Attorneys' Expenses, and/or an Incentive Award should be approved.

f.   The Court may, for good cause, extend any of the deadlines set forth in this Preliminary Approval Order without further notice to the Class Members, though such extensions shall be posted to the Settlement Website. The Final Approval Hearing may be continued by order of the Court from time to time and without further notice to the Class Members beyond updates to the Court's docket and the Settlement Website.

17.   **If The Settlement Is Not Finally Approved:** In the event the Final Approval Order or Final Judgment is not entered by the Court, or in the event that the Settlement Agreement becomes null and void or terminates pursuant to its terms, the Settlement, this Preliminary Approval Order, and all orders entered in connection herewith shall become null and void, shall be of no further force and effect, and shall not be used or referred to for any purposes whatsoever in this Litigation or in any other case or controversy. In such event the Settlement Agreement and all negotiations and proceedings directly related thereto shall be deemed to be without prejudice to the rights of any and all of the Parties, who shall be restored to their respective positions as of the date and time immediately preceding the execution of the Settlement Agreement.

18.   **No Admissions:** This Preliminary Approval Order shall not be construed as an admission or concession by Defendant of the truth of any Allegations made by the Plaintiffs or of liability or fault of any kind.

19.   **Binding Effect:** All Class Members shall be bound by all determinations and judgments in the Lawsuit concerning the Settlement (including, but not limited to, the releases provided for therein), whether favorable or unfavorable to the Class.

20.   **Authorization:** Counsel for the Parties are hereby authorized to use all reasonable procedures in connection with the administration of the Settlement that are not

materially inconsistent with either this Preliminary Approval Order or the terms of the Settlement Agreement.

21.     **Stay of Further Proceedings:** All further proceedings and deadlines in this action are hereby stayed except for those required to effectuate the Settlement Agreement and this Preliminary Approval Order.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this _____ day of _____, 202__.

_____

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

# **Exhibit 2**

# NOTICE OF CLASS ACTION SETTLEMENT

*Wheeler, et al. v. Arkema Inc.*
Settlement Administrator
[Address]
[Phone]

First-Class
Mail
US Postage
Paid
Permit #___

# To all residents and real property owners since August 30, 2017, located within a 7-mile radius of the Crosby Arkema Inc. Chemical Plant.

## Please read to learn your rights.

|||||||||||||||||||||||
Postal Service: Please do not mark barcode

«First1» «Last1»
«C/O»
«Addr1»  «Addr2»
«City», «St»  «Zip»

A proposed class action settlement has been reached with Arkema Inc. ("Defendant"), regarding fires that occurred at its facility located at 18000 Crosby Eastgate Rd., Crosby, Texas 77532, during Hurricane Harvey in late August and early September 2017. The settlement resolves a lawsuit entitled *Wheeler, et al. v. Arkema Inc.*, Case No. 4:17-cv-2960 (the "Lawsuit"), United States District Court for the Southern District of Texas (the "Court"). The Court authorized this notice.

The Lawsuit alleges that the fires at Defendant's facility deposited dioxin compounds on properties surrounding the facility.  Defendant denies all allegations and claims. The Court has not decided the Lawsuit, but the parties have agreed to a class settlement to resolve the dispute.

You received this notice because real property records reflect that you may be a member of the Class.  The Class includes all residents and real property owners since August 30, 2017 located within a 7-mile radius of the Crosby Arkema Inc. Chemical  Plant.

**If you are a member of the Class and currently own real property located within a 7-mile radius of the Crosby Arkema Inc. Chemical Plant, you will be eligible to have your real property tested for dioxin compounds, if you so request. Depending on the results, you  may be eligible to have dioxin compounds removed from your real property. Additionally, all Class Members will have the opportunity to participate in a study that will track the potential for future development of certain diseases in the community. The settlement makes more than $20 million available for property testing removal, and an additional $1.7 million for the disease study.**

**To see a more detailed notice of the terms of the settlement, answers to frequently asked questions, and other information about the Lawsuit, please visit the settlement website: crosbyharveysettlement.com.**  If you cannot access the website, you can obtain  the  detailed  notice  by contacting  the  Settlement Administrator at the address or phone number on  the reverse side of this card.

If the settlement is approved by the Court, any legal claims you have against the Defendant that were or could have been raised in the Lawsuit will be released that (1) seek injunctive, declaratory, equitable, or non-monetary relief;  (2) arise under the  Resource  Conservation  and  Recovery  Act  or Comprehensive Environmental Response, Compensation, and Liability Act; and/or (3) are brought in a representative or collective capacity.

You have the right to object to the settlement.  Your objection must be received by [Date].  For details on how to object, visit the settlement website at crosbyharveysettlement.com.

The Court will hold a final approval hearing on [Date] at [Time] to consider whether to approve the settlement. Class Counsel will ask the Court to award them $8,500,000 in Attorneys' Fees, as well as lawsuit expenses, and an incentive award  to  the individuals  who  started  the  Lawsuit. These funds are in addition to the amounts available for  property testing and remediation and the disease study.  You  may appear at the hearing, but you do not have to.

**For more information, please visit the settlement website at crosbyharveysettlement.com.**

# **Exhibit 3**

## ATTENTION ALL RESIDENTS AND REAL PROPERTY OWNERS
## SINCE AUGUST 30, 2017, LOCATED WITHIN A 7-MILE RADIUS OF
## THE CROSBY, TEXAS, ARKEMA INC. CHEMICAL PLANT

### This notice may affect your rights. Please read it carefully.

*A court has authorized this notice. This is not a solicitation from a lawyer.*

- This notice concerns a case called *Wheeler, et al. v. Arkema Inc.*, Case No. 4:17-cv-2960-KPE, pending in the United States District Court for the Southern District of Texas.

- This class action Settlement will resolve a lawsuit against Arkema Inc. ("Defendant"). The lawsuit affects all individuals who have resided or owned real property located within a seven-mile radius (measured as a straight-line distance) from the fenceline boundary of Defendant's facility located at 18000 Crosby Eastgate Rd., Crosby, Texas 77532 (the "Class Area"), since August 30, 2017 (the "Class").

- The lawsuit contends that the fires that occurred at Defendant's facility in Crosby, Texas, during Hurricane Harvey in August and September 2017 deposited dioxin compounds on properties surrounding the facility. The lawsuit seeks a court order to mandate that Defendant pay to test real properties located within the Class Area for dioxin compounds, pay to remove dioxin compounds from properties where tests exceed certain thresholds, and to fund a medical surveillance program.

- Defendant denies any wrongdoing. It contends that it complied with the law in all respects and at all times, and that the fires did not result in any harm to persons or property.

- To settle the case, Defendant has agreed to fund an account with more than $20,000,000 to pay for testing of real properties located within the Class Area for dioxin compounds, if requested by a Class Member who currently owns the real property, and, depending on eligibility criteria, to have dioxin compounds removed from real properties located within the Class Area. In addition, Defendant agreed to fund an account with $1,700,000 to pay for an anonymized epidemiological study that will track the potential for future development of certain chronic diseases that all Class Members will have the opportunity to participate in.

- The lawyers who brought the lawsuit ("Class Counsel") will ask the Court to award them $8,500,000 in Attorneys' Fees and [Amount] in Attorneys' Expenses, to be paid by Defendant, for investigating the facts, litigating the case, and negotiating the Settlement. Class Counsel will also ask for $200,000 for the individuals who brought this lawsuit. This payment is called the "Class Representatives Incentive Award." These funds are in

Questions? Visit crosbyharveysettlement.com or call [phone number].

1

addition to the amounts available for property testing and remediation and the disease study.

- Your legal rights are affected whether or not you act. Read this notice carefully.

This notice summarizes the proposed Settlement. For the precise terms and conditions of the Settlement, please see the Settlement Agreement, available at crosbyharveysettlement.com, or contact the Settlement Administrator at [address] or by telephone at [phone number].

**PLEASE DO NOT CALL THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT**

| YOUR RIGHTS AND OPTIONS IN THIS SETTLEMENT | | DEADLINE |
|---|---|---|
| **File Objection** | Write to the Court about any aspect of the Settlement you don't like or you don't think is fair, adequate, or reasonable. (If you object to any aspect of the Settlement, you must submit a written objection by the Objection Deadline). | **[DATE]** |
| **Go to a Hearing** | Speak in Court about the Settlement. (If you object to any aspect of the Settlement, you **must** submit a written objection by the Objection Deadline noted above). | **[DATE]** |
| **Do Nothing** | You will receive the benefit of the Settlement if the Court approves it. If you are a Class member, you will have the opportunity to participate in an anonymized epidemiological study to track the potential for future development of certain diseases. If you currently own real property located within a seven-mile radius of the fenceline boundary of the Crosby, Texas, Arkema Inc. Chemical Plant, you will be eligible to have your real property tested for dioxin compounds, if you request, and, depending on eligibility criteria, you will be eligible to have dioxin compounds removed from your real property (each subject to fund availability). | |

- These rights and options—and deadlines to exercise them—are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the Settlement. The benefits of the Settlement will be provided to Class Members only if the Court

Questions? Visit crosbyharveysettlement.com or call [phone number].

2

approves the Settlement. If there are appeals, these benefits will not be provided until the appeals are resolved and the Settlement becomes effective. Please be patient.

- **Final Approval Hearing**
  On [date], at [time], the Court will hold a hearing to determine: (1) whether the Settlement should be approved as fair, reasonable, and adequate, and should receive final approval; (2) whether Class Counsel's application for Attorneys' Fees and Attorneys' Expenses should be granted; and (3) whether the application for the Class Representatives Incentive Award should be granted. The hearing will be held in the United States District Court for the Southern District of Texas, Houston Division, before the Honorable Keith P. Ellison, 515 Rusk Avenue, Houston, TX 77002, in Courtroom 3716 on the 3rd Floor, or such other judge assigned by the Court. This hearing date may change without further notice to you. Consult the Settlement Website at crosbyharveysettlement.com, or the Court docket in this case available through Public Access to Court Electronic Records ("PACER") (http://www.pacer.gov), for updated information on the hearing date and time.

## Important Dates

[DATE] | Opt-Out Deadline
[DATE] | Final Approval Hearing

## Table of Contents

1.   How Do I Know If I Am Affected By The Settlement?...........................................1

2.   What Is The Lawsuit About?.....................................................................................1

3.   Why Is There A Lawsuit?..........................................................................................2

4.   Why Is This Case Being Settled?..............................................................................2

5.   What Can I Get In The Settlement?...........................................................................3

6.   How Do I Participate In The Settlement?..................................................................3

7.   When Do I Get My Benefits?....................................................................................3

8.   What Do Plaintiffs And Their Lawyers Get?............................................................3

9.   What Happens If The Settlement Is Approved?........................................................4

10.  How Do I Object To The Settlement?.......................................................................6

11.  When Will The Court Decide If The Settlement Is Approved?................................7

12.  How Do I Get More Information?.............................................................................7

### 1.  How Do I Know If I Am Affected By The Settlement?

This case is about fires that occurred at Defendant's facility located at 18000 Crosby Eastgate Rd., Crosby, Texas 77532, during Hurricane Harvey in late August and early September 2017. If you resided or owned a real property located within a seven-mile radius (measured as a straight-line distance) of the fenceline boundary of that facility at any point since August 30, 2017, you are a member of the Class.

On May 18, 2022, the Court certified a Class defined as "All residents and real property owners located within a 7-mile radius of the Crosby, Texas, Arkema Inc. Chemical Plant." Excluded from the Class are: (a) the Honorable Keith P. Ellison and the Honorable Dena Palermo, any member of their staff who worked directly on this litigation, and any member of their immediate families; (b) counsel for the parties to the lawsuit, any member of their respective staff who worked directly on the this litigation, and any member of their immediate families; (c) any government entity; (d) any entity or real property in which Defendant has a controlling interest; and (e) any of Defendant's subsidiaries, parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns.

If the Settlement does not become effective (for example, because it is not finally approved, or the approval is reversed on appeal), then this litigation will continue.

### 2.  What Is The Lawsuit About?

A lawsuit was brought by Plaintiffs against Defendant following fires that occurred at Defendant's facility located at 18000 Crosby Eastgate Rd., Crosby, Texas 77532, during Hurricane Harvey in late August and early September 2017. Plaintiffs allege that the fires caused harm to persons and property. Defendant denies that there is any factual or legal basis for Plaintiffs' allegations. Plaintiffs contend that the fires deposited dioxin compounds on properties surrounding Defendant's Crosby facility at a level that poses a risk to human health or the environment. Defendant contends that the fires did not result in any harm or risk of harm to persons or property. In the lawsuit, Defendant has asserted defenses to the claims raised by Plaintiffs on behalf of the Class. The Court has not determined whether Plaintiffs or Defendant is correct.

This lawsuit is a class action. A class action is a lawsuit in which the claims and rights of many people are decided in a single court proceeding. One or more people—sometimes called "class representatives"—sue on behalf of people who may have similar claims. All of the people who may have similar claims form a "class" and are "class members." A settlement in a class action—if approved by the Court as fair, reasonable, and adequate—resolves the claims for all class members.

Questions? Visit crosbyharveysettlement.com or call [phone number].

1

### 3.      Why Is There A Lawsuit?

Although Defendant denies that there is any legal entitlement to any relief, Plaintiffs contend that the fires at Defendant's Crosby facility deposited dioxin compounds on properties surrounding Defendant's Crosby facility at a level that poses a risk to human health or the environment. Among other things, the lawsuit seeks a court order to mandate that Defendant pay to test real properties located within the Class Area for dioxin compounds, pay to remove dioxin compounds from properties where tests exceed certain thresholds, and fund a medical surveillance program.

### 4.      Why Is This Case Being Settled?

The Court has not decided in favor of either side in the lawsuit. Neither Plaintiffs nor Defendant has won or lost.

Instead, Class Counsel have investigated the facts and applicable law concerning the Plaintiffs' and Class's claims and Defendant's defenses over the course of six years of litigation and determined that the proposed Settlement is in the best interests of the Class. Plaintiffs filed their original lawsuit on October 3, 2017. On June 3, 2019, following extensive fact and expert investigation by the Parties, the Court certified classes for property damages, property remediation, and medical surveillance. Defendant successfully appealed that class-certification decision, and the United States Court of Appeals for the Fifth Circuit decertified the classes on January 22, 2021. On May 18, 2022, following additional fact and expert investigation by the Parties, the Court certified classes for property remediation and medical surveillance, but denied certification for the requested property damages class. The case was then set to proceed to trial.

During six years of litigation, Class Counsel have conducted a thorough examination and investigation into the facts and law at issue. The parties participated in mediation sessions with the Honorable Dena Palermo, United States Magistrate Judge for the Southern District of Texas.

Class Counsel and counsel for Defendant have determined that continuing the litigation would present significant risks to both sides. For example, Class Counsel have concluded that there may be substantial difficulties establishing that any dioxin compounds deposited on properties from the fires at Defendant's Crosby facility pose an imminent and substantial threat to human health or the environment. And both sides want to avoid the uncertainty, delay, and expense of continuing to litigate.

The Parties have engaged in mediation and several rounds of settlement discussions. After considering the risks and costs of further litigation, the Parties have concluded that it is desirable that the Plaintiffs' claims be settled and dismissed on the terms of the Settlement Agreement.

Plaintiffs and Class Counsel have concluded that the terms and conditions of the Settlement are fair, reasonable, and adequate, and that the Settlement is in the best interest of the Class Members. The Settlement allows all Class Members to have the opportunity to participate in an anonymized epidemiological study to track the potential for future development of certain

Questions? Visit crosbyharveysettlement.com or call [phone number].

2

diseases. And Class Members who currently own real property located within a seven-mile radius of the fenceline boundary of the Crosby, Texas, Arkema Inc. Chemical Plant, will be eligible to have their real property tested for dioxin compounds, if they request that, and, depending on eligibility criteria, will be eligible to have dioxin compounds removed from their real property (each subject to fund availability).

## 5.   What Can I Get In The Settlement?

Class Members who currently own real property located within a seven-mile radius of the fenceline boundary of the Crosby, Texas, Arkema Inc. Chemical Plant (measured as a straight-line distance), will be eligible to have their real property tested for dioxin compounds, if they request that, and, depending on eligibility criteria, will be eligible to have dioxin compounds removed from their real property (each subject to fund availability).

In addition, all Class Members will have the opportunity to participate in an anonymized epidemiological study to track the potential for future development of certain diseases.

## 6.   How Do I Participate In The Settlement?

Information regarding how to participate in the Settlement is available on the Settlement Website at crosbyharveysettlement.com.

## 7.   How Can I Take Advantage Of The Benefits Provided For By The Settlement?

If the Court approves the Settlement and there are no appeals, then Class Members will be able to take advantage of the benefits provided for by the Settlement approximately 31 days after the Court enters its Final Approval Order. If the Court approves the Settlement and an appeal is taken, and the Settlement is upheld on appeal, then Class Members will be able to take advantage of the benefits provided for by the Settlement approximately three business days after the conclusion of the appeal. But if the Court does not approve the Settlement, or if the Settlement is overturned on appeal, no benefits of the Settlement will be available.

## 8.   What Do Plaintiffs And Their Lawyers Get?

To date, Class Counsel have not been compensated for any of their work on this case. As part of the Settlement, Class Counsel may apply to the Court to award them up to $8,500,000 from Defendant to pay their Attorney's Fees, and up to [amount] to reimburse their Attorneys' Expenses. Defendant has the right to object to Class Counsel's Application for Attorneys' Fees if it is in an amount that exceeds $8,500,000, and to object to Class Counsel's Application for Attorneys' Expenses if it is in an amount that exceeds $2,000,000. An award to Class Counsel does not reduce the funds available for Class benefits.

Questions? Visit crosbyharveysettlement.com or call [phone number].

In addition, the named Class Representatives in this case may apply to the Court for a Class Representatives Incentive Award up to $200,000 total. This payment is designed to compensate the named Class Representatives for the time and effort they undertook in pursuing this litigation to the benefit of the Class. Any Class Representatives Incentive Award does not reduce the funds available for Class benefits.

A copy of Class Counsel's motion for an award for Attorneys' Fees and Attorneys' Expenses, and for a Class Representative Incentive Award is available on the Settlement Website: crosbyharveysettlement.com. The Court will determine the amount of Attorneys' Fees, Attorneys' Expenses, and Class Representatives Incentive Award.


### 9.      What Happens If The Settlement Is Approved?

If you are a Class Member and the Settlement is ultimately approved, you will be legally bound by all orders and judgments of the Court, and you will also be legally bound to the releases in the Settlement. This means that in exchange for being a Class Member and being eligible for the benefits in the Settlement, you will not be able to sue, continue to sue, or be part of any other lawsuit against Defendant and/or any of the Released Parties that involves the same legal claims as those resolved through this Settlement.

You will not be responsible for any out-of-pocket costs or attorneys' fees concerning this case.

If the Settlement is ultimately approved, being a Class Member means that you agree to the following terms of the Settlement that describe exactly the legal claims that you give up:

a. Upon Final Approval, Class Members other than the Class Representatives, and all other persons acting or purporting to act on a Class Member's behalf, including but not limited to the Class Member's parent, child, heir, guardian, associate, co-owner, attorney, agent, administrator, executor, devisee, predecessor, successor, assignee, assigns, representative of any kind, shareholder, partner, director, employee or affiliate, shall have unconditionally, completely, and irrevocably released and discharged the Released Parties from any and all claims, liens, demands, actions, causes of action, rights, duties, obligations, or liabilities, known or unknown, that arise directly or indirectly out of, or in any way relate to the Litigation or the Allegations that (1) seek injunctive, declaratory, equitable, or other non-monetary relief, of any nature whatsoever arising under any legal theory or claim whatsoever, whether by common law, statute, or otherwise; (2) arise under the Resource Conservation and Recovery Act or the Comprehensive Environmental Response, Compensation, and Liability Act; and/or (3) are brought in a representative or collective capacity, of any nature whatsoever arising under any legal theory or claim whatsoever, whether by common law, statute, or otherwise, and seeking any relief of any nature whatsoever. Upon Final Approval, Class Members shall be forever barred from initiating, maintaining, or prosecuting any Released Claims against the Released Parties.

Questions? Visit crosbyharveysettlement.com or call [phone number].

4

b.  Class Members shall, by operation of Final Approval Order and Final Judgment, be deemed to have waived the provisions, rights and benefits of California Civil Code Section 1542, and any similar law of any state or territory of the United States or principle of common law, but only with respect to the matters released as set forth above. California Civil Code Section 1542 provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

The Class Members shall, by operation of the Final Approval Order and Final Judgment, be deemed to assume the risk that facts additional, different, or contrary to the facts that each believes or understands to exist, may now exist, or may be discovered after the release set forth in this Agreement becomes effective, and the Parties and Class Members shall, by operation of the Final Approval Order and Final Judgment, be deemed to have agreed that any such additional, different, or contrary facts shall in no way limit, waive, or reduce the foregoing releases, which shall remain in full force and effect.

c.  Class Members agree and covenant not to sue any Released Parties with respect to any of the Released Claims set forth above, or otherwise to assist others in doing so, and agree to be forever barred from doing so, in any court of law or equity, or any other forum. Each Class Member will be deemed to have agreed and covenanted not to sue any Released Parties with respect to any of the Released Claims as set forth above, and agree to be forever barred from doing so, in any court of law or equity, or any other forum.

d.  Class Members shall be deemed to have agreed that the release set forth herein will be and may be raised as a complete defense to and will preclude any action or proceeding based on the Released Claims.

e.  The term "Released Parties" as used above includes Defendant and its current and former parent companies, subsidiaries, affiliates, divisions, and current and former affiliated individuals and entities, legal successors, predecessors (including companies they have acquired, purchased, or absorbed), assigns, joint ventures, and each and all of their respective officers, partners, directors, owners, stockholders, servants, agents, shareholders, members, managers, principals, investment advisors, consultants, employees, representatives, attorneys, accountants, lenders, underwriters, benefits administrators, investors, funds, and insurers, past, present and future, and all persons acting under, by, through, or in concert with any of them.

The full text of the Settlement Agreement, which includes all of the provisions about settled claims and releases, is available on the website: crosbyharveysettlement.com.

Questions? Visit crosbyharveysettlement.com or call [phone number].

5

10.     **How Do I Object To The Settlement?**

You can ask the Court to deny approval of the Settlement by timely filing an objection with the Court. You can't ask the Court to require a larger or different Settlement; the Court can only approve or disallow the Settlement. If the Court denies approval to the Settlement, no Class Members will receive the benefits of the Settlement, and the lawsuit will continue.

You can also ask the Court to disapprove the requested Attorneys' Fees, Attorneys' Expenses, and/or Class Representatives Incentive Awards. If any of those payments are disapproved or reduced, no additional benefits will be made available to the Class. Instead, any amounts disapproved for Attorneys' Fees will be retained by Defendant, any amounts disapproved for Attorneys' Expenses will remain available and earmarked to pay for Administration Costs incurred by the Settlement Administrator, and any amounts disapproved for Class Representatives Incentive Awards will be donated in equal amounts to Houston Wilderness, Buffalo Bayou Partnership, Coastal Prairie Conservancy, Galveston Bay Foundation, and Armand Bayou Nature Center.

You may also appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for paying that attorney. **If you want to raise an objection to the Settlement at the Final Approval Hearing, you must submit that objection in writing, by the Objection Deadline, which is [date], to the Clerk of Court, United States District Court for the Southern District of Texas, 515 Rusk Avenue, Houston, TX 77002, postmarked or filed via the Court's electronic filing system (ECF).**

To be valid, an objection must include: (a) a reference to this case, *Shannan Wheeler, et al. v. Arkema Inc.*, Case No. 4:17-2960-KPE (S.D. Tex.), and the name of the presiding Judge, the Hon. Keith P. Ellison; (b) your name, address, telephone number, and, if available, email address, and, if you are represented by counsel, your counsel's name, address, telephone number, email, and bar number; (c) a written statement of all grounds for the objection, accompanied by any legal support for such objection; (d) a statement of whether you intend to appear at the Final Approval Hearing, either with or without counsel; (e) a statement of your membership in the Class; (f) a detailed list of any other objections submitted by you, or your counsel, to any class actions submitted in any court, whether state or otherwise, in the United States in the previous five (5) years; and (g) your signature, even if the objection is submitted through counsel. If you or your counsel have not objected to any other class action settlement in any court in the United States in the previous five (5) years, you shall affirmatively state so in the written materials provided in connection with the objection to this Settlement. This information is material to the Court's consideration of the Settlement; failure to include this information and documentation may be grounds for overruling and rejecting the objection.

You have the right to appear and be heard at the Final Approval Hearing, either personally or through an attorney retained at your own expense. However, if you wish to object to the Settlement Agreement at the Final Approval Hearing (either personally or through counsel), you must submit a timely written objection in compliance with the requirements above. In addition, if you are objecting, to appear in person or by counsel at the Final Approval Hearing, you must include in your objection a Notice of Intention to Appear. The Notice of Intention to Appear must include copies of any papers, exhibits, or other evidence that you (or your counsel)

Questions? Visit crosbyharveysettlement.com or call [phone number].

6

will present to the Court in connection with the Final Approval Hearing. Any Class Member who fails to submit a proper Notice of Intention to Appear will not be heard during the Final Approval Hearing.

**If you fail to comply with these requirements or fail to submit your objection and Notice of Intention to Appear by the deadline (which is [date]), you may be deemed to have waived all objections and may not be entitled to speak at the Final Approval Hearing on [date].**

You do not need to appear at the Final Approval Hearing or take any other action to indicate your approval of the Settlement Agreement.

11. **When Will The Court Decide If The Settlement Is Approved?**

The Court will hold a hearing on [date] to consider whether to approve the Settlement. The hearing will be held in the United States District Court for the Southern District of Texas, Houston Division, before the Honorable Keith P. Ellison, 515 Rusk Avenue, Houston, TX 77002, in Courtroom 3716 on the 3rd Floor, or such other judge assigned by the Court.

The hearing is open to the public. This hearing date may change without further notice to you. Consult the Settlement Website at crosbyharveysettlement.com or the Court docket in this case available through the Public Access to Court Electronic Records ("PACER") (http://pacer.gov), for updated information on the hearing date and time.

12. **How Do I Get More Information?**

You can inspect many of the Court documents connected with this case on the Settlement Website. Other papers filed in this lawsuit are available by accessing the Court docket in this case available through PACER (http://pacer.gov).

You can contact the Settlement Administrator at [address] or by telephone at [phone number].

You can also obtain additional information by contacting Class Counsel:

> Mike Stag and Ashley Liuzza
> Stag Liuzza
> 365 Canal St #2850
> New Orleans, LA 70130
> Telephone: (504) 593-9600
> https://stagliuzza.com/

Please do not address any questions about the Settlement or Litigation to the Clerk of Court or the Judge.

Questions? Visit crosbyharveysettlement.com or call [phone number].

7

# **<u>Exhibit 4</u>**

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| SHANNAN WHEELER, *et al.*, | CIVIL ACTION |
| *Plaintiffs*, | Case No. 4:17-cv-2960 |
| v. | Hon. Keith P. Ellison |
| ARKEMA INC., | |
| *Defendant*. | |

**ORDER GRANTING
FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FINAL JUDGMENT**

Plaintiffs Larry Anderson, Tanya Anderson, Bevely Flannel, Roland Flannel, Corey Prantil, Betty Whatley, Bret Simmons, and Phyllis Simmons have moved the Court for final approval of a proposed class-action settlement with Defendant Arkema Inc., the terms and conditions of which are set forth in the Settlement Agreement filed with the Court on [date] (Dkt. ___).[1] For the reasons described more fully below, the Court **GRANTS** final approval of the Settlement.

**PROCEDURAL HISTORY**

This case concerns fires that occurred at Defendant's facility located at 18000 Crosby Eastgate Rd., Crosby, Texas 77532, during Hurricane Harvey in late August and early September 2017. The procedural history is summarized in the Settlement at Sections 1.1 through 1.22.

---

[1] Capitalized terms herein have the same meaning as set forth in the Settlement Agreement.

## SUMMARY OF SETTLEMENT TERMS

Class Members are "all residents and real property owners located within a 7-mile radius of the Crosby, Texas, Arkema Inc. Chemical Plant since August 30, 2017."[2] Under the Settlement Agreement, Defendant shall make a payment in the amount of $24,000,000.00 into a single escrow account, which the Settlement Administrator shall direct into four escrow accounts as follows: (1) $20,100,000.00 into the Property Characterization/Remediation Escrow Account to fund the Property Characterization and Remediation Work; (2) $1,700,000.00 into the Anonymized Epidemiological Study Escrow Account to fund the Anonymized Epidemiological Study; (3) $200,000.00 into the Incentive Awards Escrow Account; and (4) $2,000,000.00 into the Expenses Escrow Account.

Class Members who currently own real property located within a seven-mile radius of Defendant's Crosby facility (measured as a straight-line distance), will be eligible to have their real property tested for dioxin compounds, if they request that, and, depending on eligibility criteria, will be eligible to have dioxin compounds removed from their real property (each subject to fund availability). In addition, all Class Members will have the opportunity to participate in an anonymized epidemiological study to track the potential for future development of certain diseases.

---

[2] Excluded from the class are (a) the Honorable Keith P. Ellison and the Honorable Dena Palermo, any member of their staffs who worked directly on this Litigation, and any member of their immediate families; (b) counsel for the Parties, any member of their respective staffs who worked directly on this Litigation, and any member of their immediate families; (c) any government entity; (d) any entity or real property in which Defendant has a controlling interest; and (e) any of Defendant's subsidiaries, parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns.

The Settlement also provides that Class Counsel may seek an award of up to $8,500,000.00 in Attorneys' Fees, up to $2,000,000.00 to reimburse their Attorneys' Expenses, and up to $200,000.00 total for Class Representatives Incentive Awards.

## NOTICE AND SETTLEMENT ADMINISTRATION

The Settlement Agreement is being administered by a well-known, independent settlement administrator, Edgar C. Gentle, III. Following the Court's preliminary approval, the Settlement Administrator established the Settlement Website at crosbyharveysettlement.com, which contained (1) the Long Form Notice that provides (a) more details about the case and the Settlement, (b) the procedures for Class Members to object to the Settlement, (c) answers to frequently asked questions about the Settlement, and (d) a contact information page that includes the address and telephone numbers for the Settlement Administrator and Class Counsel; (2) the Settlement Agreement; and (3) the signed Preliminary Approval Order. In addition, the papers in support of Final Approval and the Application for Attorneys' Fees, Attorneys' Costs, and an Incentive Award were placed on the Settlement Website after they were filed. The Settlement Administrator also operated a toll-free number for class member inquiries.

Notice of the Settlement was provided to the Class Members via the Postcard Notice mailed to each Class Member and the Long Form Notice posted to the Settlement Website.

## ANALYSIS

### I.     Jurisdiction.

This court has jurisdiction under 28 U.S.C. § 1332(d)(2).

### II.    Notice.

The Notice Plan provided notice to Class Members directly. The Court reaffirms the finding it made in the Preliminary Approval Order that the Notice Plan provided the best

practicable notice to the Class Members and satisfied the requirements of due process. *See* Fed. R. Civ. P. 23(e)(1) ("[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal"); *ODonnell v. Harris Cty., Tex.*, No. 16-1414, 2019 WL 4224040, at *26 (S.D. Tex. Sept. 5, 2019) (Rosenthal, J.) (regarding Rule 23(b)(2) class, "[d]ue process is satisfied if the notice provides class members with the information reasonably necessary for them to make a decision whether to object to the settlement" (internals omitted)).

### III.   Final approval of the Settlement.

A court may approve a proposed class-action settlement of a certified class only:

after a hearing and on a finding that it is fair, reasonable, and adequate after considering whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). In addition, courts within the Fifth Circuit consider the following six factors in determining whether to approve a class-action settlement: (1) the existence of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings; (4) plaintiff's probability of success on the merits; (5) the range of possible recovery;

and (6) the opinions of class counsel, class representatives, and absent class members. *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983). The Rule 23(e)(2) requirements overlap significantly with the *Reed* factors, so the Court will consider the Rule 23(e)(2) requirements as informed by the *Reed* factors.

In reviewing the Settlement, the Court does not address whether the Settlement is ideal or the best outcome, but determines only whether the settlement is fair, free of collusion, and consistent with Plaintiffs' fiduciary obligations to the class. *Glover v. Woodbolt Dist., Ltd.*, No. 12-2191, 2012 WL 5456361, at *1 (S.D. Tex. Nov. 7, 2012) (Miller, J.).

For the reasons further detailed below and discussed at the Final Approval hearing, the Court finds that the Settlement is fair, reasonable, and adequate to all Class Members, including those who are minors, lack capacity, incompetent, or deceased, under the Rule 23(e)(2) requirements and *Reed* factors. Class Counsel weighed the risks inherent in establishing all the elements of their claims and proving entitlement to the relief requested. Defendant vigorously denied all allegations. Proceeding to trial would have been costly, recovery was not guaranteed, and there was the possibility of continued, protracted appeals. The Settlement was reached only after extensive litigation, including requesting and receiving written discovery responses, examining hundreds of thousands of pages of Defendant's documents, retaining 20+ expert witnesses and reviewing their expert reports, conducting more than 30 depositions, participating in days of hearings on the admissibility of expert testimony, conducting two full class certification proceedings in the matter, including two full rounds of briefing and two lengthy hearings, and an interlocutory appeal and request for a second interlocutory appeal. Counsel for both Parties were highly experienced. There is no factual basis to support any allegation of collusion or self-dealing.

A.      **The Class Representatives and Class Counsel have adequately represented the Class.**

In the Court's order certifying the Class (Dkt. No. 316), the Court found that the Class Representatives and Class Counsel adequately represented the interests of the Class. The Court has seen no evidence to contradict its previous finding, and reconfirms it here. Class Counsel has vigorously prosecuted this action through motion practice, defense of an interlocutory appeal and request for a second interlocutory appeal, extensive discovery, and formal mediation, and therefore "[a]mple record evidence shows that the class has been ably and diligently represented" and "[t]his weighs heavily in favor of approving the … settlement agreement." *ODonnell*, 2019 WL 6219933, at *10. Rule 23(e)(2)(A)'s requirement is met.

B.      **The Settlement was negotiated at arm's length.**

Rule 23(e)(2)(B) and the first *Reed* factor both question whether fraud or collusion exists in the negotiation. This Court finds that the Settlement is the product of serious, non-collusive, arms'-length negotiations by experienced counsel with the assistance of the Honorable Dena Palermo as a neutral mediator. *See, e.g.*, *Cole v. Collier*, No. 14-1698, 2018 WL 2766028, at *4 (S.D. Tex. June 8, 2018) (Ellison, J.) ("There is no evidence of collusion between the parties in the record…. The parties reached agreement after arm's-length negotiations, conducted in good faith. A neutral mediator facilitated the settlement negotiations."); *Jasso v. HC Carriers, LLC*, No. 20-212, 2022 WL 16927813, at *4 (S.D. Tex. Oct. 19, 2022) (Kazen, M.J.) ("the parties represent that their settlement agreement was the product of substantial arm's-length negotiations, with the assistance of an experienced … mediator. Accordingly, the first [*Reed*] factor weighs in favor of the settlement agreement." (internals omitted)).

The Court has independently and carefully reviewed the record for any signs of collusion and self-dealing, and finds that no collusion or self-dealing occurred. Specifically, the Court finds

that Class Counsel did not compromise the claims of the settlement class in exchange for higher fees. The Parties did not discuss or negotiate Attorneys' Fees until after the Parties had already agreed upon relief for the Class. The requirements of Rule 23(e)(2)(B) and the first *Reed* factor are met.

### C.     The relief to the Class is adequate.

Rule 23(e)(2)(C) requires the relief granted by the Settlement to be adequate, taking into account (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief; (iii) the terms of any award of attorneys' fees; and (iv) any side agreements. Rule 23(e)(2)(C)'s considerations also implicate *Reed* factors two through five: the complexity, expense, and likely duration of the litigation; the stage of the proceedings; plaintiffs' probability of success; and the range of possible recovery. *See Kostka v. Dickey's Barbecue Restaurants, Inc.*, No. 20-3424, 2022 WL 16821685, at *11 (N.D. Tex. Oct. 14, 2022) (comparing Rule 23(e)(2)(C)'s requirements with the *Reed* factors). For the reasons explained below, Rule 23(e)(2)(C)'s requirements and *Reed* factors two through five are satisfied.

#### 1.     Recovery to the Class.

Although not articulated as a separate factor in Rule 23(e), "[t]he relief that the settlement is expected to provide to class members is a central concern." Fed. R. Civ. P. 23(e)(2)(C)–(D), adv. comm. n. to 2018 am. In evaluating the relief provided, there "is a strong presumption in favor of finding the Settlement Agreement fair." *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 286 (W.D. Tex. 2007) (internals omitted).

Defendant has agreed to make a payment in the amount of $24,000,000.00 into a single escrow account, which the Settlement Administrator shall direct into four escrow accounts as follows: (1) $20,100,000.00 into the Property Characterization/Remediation Escrow Account to

fund the Property Characterization and Remediation Work; (2) $1,700,000.00 into the Anonymized Epidemiological Study Escrow Account to fund the Anonymized Epidemiological Study; (3) $200,000.00 into the Incentive Awards Escrow Account; and (4) $2,000,000.00 into the Expenses Escrow Account. Class Members who currently own real property located within a seven-mile radius of Defendant's Crosby facility (measured as a straight-line distance), will be eligible to have their real property tested for dioxin compounds, if they request that, and, depending on eligibility criteria, will be eligible to have dioxin compounds removed from their real property (each subject to fund availability). In addition, all Class Members will have the opportunity to participate in an anonymized epidemiological study to track the potential for future development of certain diseases.

Further, before agreeing upon the terms of the Settlement, the Parties engaged in extensive factual investigation, which included numerous fact and expert depositions, document production in the hundreds of thousands of pages, and discovery. The Parties also had undertaken extensive briefing and argument on various significant legal issues, including in connection with class certification. The Court had issued multiple orders and decisions on these important issues. The record was thus sufficiently developed that the Parties were fully informed as to the viability of the claims and able to adequately evaluate the strengths and weaknesses of their respective positions and risks to both sides if the case did not settle. This favors Final Approval.

## 2.    The costs, risks, and delay of trial and appeal.

"When the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened." *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1064 (S.D. Tex. 2012) (Rosenthal, J.) (internals omitted); *see also Ayers v. Thompson*, 358 F.3d 356,

369 (5th Cir. 2004) ("[S]ettling … avoids the risks and burdens of potentially protracted litigation."). The Parties have extensively litigated this case, which is already in its sixth year, in this Court and before the Fifth Circuit, resulting in millions of dollars in fees and costs. If the case proceeded, additional discovery, likely as contested as the past discovery, would be required. Trial "would be lengthy, burdensome, and would consume tremendous time and resources of the Parties and the Court." *ODonnell*, 2019 WL 4224040, at *10 (internals omitted). By reaching a Settlement before additional motions practice and trial, the Class Representatives avoided expense and delay, and ensured recovery for the Class. This favors Final Approval.

       **3.**       **The effectiveness of the proposed method of distributing relief to the Class.**

The Court concludes that the method of distributing relief to the Class is reasonable. All Class Members who currently own real property located within a seven-mile radius of Defendant's Crosby facility (measured as a straight-line distance), will be eligible to have their real property tested for dioxin compounds, if they request that, and, depending on eligibility criteria, will be eligible to have dioxin compounds removed from their real property (each subject to fund availability). For a period established in the Settlement Agreement, all Class Members are eligible for site assessment and characterization for any real property that they own within the Class Area. The collection and analysis of soil or indoor dust samples will be performed on a first-come, first-served basis. For a period established in the Settlement, any real property that exceeds a State-established standard for dioxin compounds will be eligible for remediation and, following that period, additional real properties will be eligible for remediation based on the Settlement Administrator's discretion.

In addition, all Class Members will have the opportunity to participate in an anonymized epidemiological study to track the potential for future development of certain diseases.

This factor favors Final Approval.

### 4.    The terms of any proposed award of Attorneys' Fees.

As discussed in Section IV, below, the Court finds the proposed award of Attorneys' Fees reasonable given the duration and hotly litigated nature of this case. This favors Final Approval.

### 5.    Side agreements.

The Court is required to consider "any agreements required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(iv). The Parties have not identified any such agreement made in connection with the proposed Settlement. This favors Final Approval.

### D.    The proposal treats Class Members equitably relative to each other.

All Class Members are entitled to the same relief under the Settlement. Rule 23(e)(2)(D)'s requirements are therefore satisfied.

### E.    The opinions of Class Counsel and the Class Representatives, and the response of Class Members.

Finally, the Court considers the sixth *Reed* factor: the opinions of Class Counsel and the Class Representatives, and the response of Class Members. The "endorsement of class counsel is entitled to deference, especially in light of class counsel's significant experience in complex civil litigation and their lengthy opportunity to evaluate the merits of the claims." *DeHoyos*, 240 F.R.D. at 292; *see also Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316, 346 (N.D. Tex. 2011) ("As class counsel tends to be the most familiar with the intricacies of a class action lawsuit and settlement, the trial court is entitled to rely upon the judgment of experienced counsel for the parties." (internals omitted)). Class Counsel have endorsed the Settlement. Class Counsel's opinions as to the benefits of the Settlement are consistent with the Court's own analysis of the Settlement under Rule 23(e)(2).

The Class Representatives likewise endorse the Settlement. As for other Class Members, out of an estimated 30,000 Class Members, there were only __ objections (less than __% of the Class). This reflects a positive response from the class. *See In re Chinese-Manuf. Drywall Prods. Liab. Litig.*, 424 F. Supp. 3d 456, 491 (E.D. La. 2020) ("The absence or small number of objectors may provide a helpful indication that the settlement is fair, reasonable, and adequate" (internals omitted)). All proper objections were addressed on the record at the Final Approval Hearing.

The sixth *Reed* factor thus supports Final Approval. Based on the record evidence and argument submitted by the Parties in connection with the Settlement, as well as the Court's familiarity with the claims and defenses, the Court finds that the Class's recovery under the Settlement is fair, reasonable, and adequate pursuant to Rule 23(e)(2) and the *Reed* factors.

## IV. Attorneys' Fees.

The Court has fully assessed and finds fair and reasonable the payment by Defendant of attorneys' fees to Class Counsel in the amount, time, and manner provided for in the Settlement Agreement and requested in the Motion for Attorneys' Fees, Costs, and Incentive Awards ("Fee Motion"). All such terms are the product of non-collusive, arms'-length negotiations. The Court notes that approval of the Settlement Agreement was not conditioned on the award of any attorneys' fees or costs.

The Court has reviewed at length the Fee Motion and Class Counsel's submissions in support of their application for an award of attorneys' fees.

In determining "reasonable" attorneys' fees, under Supreme Court and Fifth Circuit precedent, the "lodestar figure has, as its name suggests, become the guiding light" in the determination. *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011); *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). The lodestar is computed by multiplying the number of hours

reasonably expended by the reasonable hourly rate. *Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 850 (5th Cir. 1998).

Here, the submissions included in the Fee Motion reflect that Class Counsel's collective lodestar is $16,032,304.65. This figure exceeds the total amount that was requested in the Fee Motion and that was negotiated, and agreed by Defendant, to be paid pursuant to the Settlement Agreement. In reviewing Plaintiffs' submissions, based upon the Court's experience and knowledge of rates charged by attorneys of similar experience doing similar work, the Court finds that Class Counsel's hourly rates are reasonable and are commensurate with the skill and experience of the participating attorneys and their legal support staff. *See Klein v. O'Neal, Inc.*, 705 F. Supp.2d 632 (N.D. Tex. 2010) (court is itself an expert in attorneys' fees and may consider its own knowledge concerning reasonable rates charged by attorneys of similar experience and ability). Likewise, the amount of time devoted to the action was reasonable, given Defendant's vigorous defense to Plaintiffs' claims, including an interlocutory appeal of the Court's order certifying a class and further proceedings on remand, which led to the certification of the Class over Defendant's strong objections.

### B.      The *Johnson* factors.

In assessing attorneys' fees in a class-action suit, the Court must scrutinize the fee award under the factors identified by the Fifth Circuit in *Johnson v. Ga. Highway Express*, 488 F.2d 714 (5th Cir. 1976). The *Johnson* factors are: (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation,

and ability of the attorneys; (10) the political undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* at 717-19. "To fulfill its duty, the district court must not cursorily approve the attorneys' fee provision of a class settlement or delegate that duty to the parties." *In re High Sulfur Content Gasoline Prod. Liab. Litig.*, 517 F.3d 220, 229 (5th Cir. 2008). The Court has considered the *Johnson* factors in assessing whether attorneys' fees are appropriate in this case.

Here, the *Johnson* factors weigh heavily in Class Counsel's favor. Of the *Johnson* factors, the Fifth Circuit has explained that the court should "give special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience and ability of counsel." *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). There is no question that prosecuting and settling these difficult claims demanded considerable time, skill and labor. Class Counsel conducted extensive discovery, including use of expert testimony, and overcame stiff opposition to the certification of a class. Ultimately, Class Counsel reached a favorable Settlement with the Defendant, after spending more than 28,430.09 hours on this case. The Settlement Agreement provides an excellent result on behalf of the Class, none of which would have been available from Defendant absent Class Counsel's work in pursuing these claims. Class Counsel's ability to seek other work was undoubtedly limited by the sizable amount of work that this case required. Adequate compensation is necessary to ensure that counsel of this caliber is available to undertake these kinds of cases in the future. Accordingly, *Johnson* factors (1), (2) (3), (4), (5), (8), (9) and (10) weigh in Class Counsel's favor. *Johnson*, 488 F.2d at 717–18.

Moreover, Class Counsel prosecuted the action entirely on a contingent fee basis, assuming a significant risk of nonpayment. Counsel should be compensated for the risk assumed by pursuing

the case and achieving the excellent result for the Class. Accordingly, *Johnson* factors (6) and (7) weigh in Class Counsel's favor as well. *Id.*

The Court recognizes that the amount requested by Class Counsel in the Fee Motion is less than their full lodestar and that, if the case were to proceed and absent a negotiated agreement as to the fee issue, Plaintiffs might have argued their entitlement to the full lodestar amount under the fee-shifting provisions of the Resources Conservation and Recovery Act, 42 U.S.C. § 6901, *et seq.* ("RCRA"). However, Defendant may have argued that RCRA's fee-shifting provisions do not apply, or for reduction to Plaintiffs' lodestar amount below the negotiated figure. The Court need not address these or other differences in legal positions on the fee issue that might have arisen, but did not because of the Settlement. The Court simply finds, based on careful review and consideration of the *Johnson* factors, that the negotiated amount is fair and reasonable under the circumstances. The Court finds that Class Counsel has zealously prosecuted this action over the course of many years and has provided high quality representation throughout that time. The litigation was hotly contested, and it was in that challenging context that Class Counsel succeeded in negotiating what is a very beneficial Settlement on behalf of the Class.

In short, Class Counsel's effort warrants the requested and negotiated fee. Pursuant to Rule 23(h), the Court finally approves an award of Attorneys' Fees in the amount of $8,500,000, which is to be paid separately by Defendant and in no way detracts from the relief afforded to the Class.

## V.    Attorneys' Expenses.

The Court finds that reimbursement of the reasonable expenses incurred in the prosecution of this class action is appropriate. After reviewing the parties' submissions in support of the Unopposed Motion and in conjunction with the Final Approval hearing, and pursuant to Rule 23(h), the Court finally approves reimbursement of Attorneys' Expenses in the amount of $1,862,175.06. This approved amount of Attorneys' Expenses represents all claims for expenses

past, present and future incurred in connection with this litigation. Moreover, the payment of expenses will, pursuant to the terms of the Settlement Agreement, be paid from the Settlement Fund, specifically, the Expenses Escrow Account.

## VI.    Class Representative Incentive Awards.

The Settlement Agreement contemplates the Court's ability to approve Incentive Award payments to the Class Representatives not to exceed $200,000.00 as compensation for the Class Representatives' time and effort undertaken in this Litigation in pursuing the interests of the Class for nearly six years. After reviewing the parties' submissions in support of the Unopposed Motion, including declarations of counsel that detailed the extensive and time-consuming efforts of the Class Representatives in pressing the litigation forward to a successful result for the Class, the Court approves the Incentive Award payments. In making the decision to approve the Incentive Award payments, the Court considers the actions Plaintiffs have taken to protect the interests of the Class, the degree to which the Class has benefited from those actions, and the amount of time and effort each of the Plaintiffs have expended in pursuing the litigation. *Humphrey v. United Way of Texas Gulf Coast*, 802 F. Supp.2d 847, 868 (S.D. Tex. 2011).

The Court finds this case to be a prime example of a case where incentive payments may serve "to compensate class representatives for the services they provide and the named plaintiff is an essential ingredient[.]" *Id.* Plaintiffs' submissions to date in support of approval of the Settlement demonstrate the unusually high degree of involvement the named representatives have had in this case in pursuing the greater good of an effective and beneficial resolution for all members of the Class. The Court finds that Incentive Awards are appropriate totaling $200,000.00 and to be divided evenly among the eight named Class Representatives: Larry Anderson; Tanya Anderson; Bevely Flannel; Roland Flannel; Corey Prantil; Betty Whatley; Bret Simmons; and

Phyllis Simmons. Pursuant to the Settlement Agreement, the Incentive Awards will be paid from the Settlement Fund, specifically, the Incentive Awards Escrow Account.

## VII.    Compliance with the Class Action Fairness Act.

The record establishes that the Settlement Administrator served the required notices under the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, with the documentation required by 28 U.S.C. § 1715(b)(1-8).

## VIII.   Distribution of Settlement Fund and payment of Administrative Costs.

Defendant shall pay the amount of the Settlement Fund as set forth in Part III of the Settlement Agreement. No later than 10 days after Defendant pays the amount of the Settlement Fund, the Settlement Administrator shall create and fund the four escrow accounts and funds described in Part III: (i) the Property Characterization/Remediation Escrow Account; (ii) the Anonymized Epidemiological Study Escrow Account; (iii) the Incentive Awards Escrow Account; and (iv) the Expenses Escrow Account. Administration Costs and other Expenses/Costs associated with the Settlement shall be paid from the Expenses Escrow Account, as provided for in the Settlement.

Upon completion of the implementation and administration of the Settlement, as set forth in the Settlement Agreement, the Settlement Administrator shall provide a declaration for filing with the Court containing an accounting of the Settlement Fund and the amount of the Settlement Fund, if any, to be distributed *cy pres*.

## IX.     Releases and other effects of this Final Approval Order and Final Judgment.

### A.      Releases by Class Representatives.

By operation of this Final Approval Order and Final Judgment, the Class Representatives (including any Class Representative and all other persons acting or purporting to act on their behalf, including but not limited to his/her relatives, executors, heirs, successors, agents, and

16

assigns) shall have unconditionally, completely, and irrevocably released and forever discharged the Released Parties from and shall be forever barred from instituting, maintaining, or prosecuting any and all claims, liens, demands, actions, causes of action, rights, duties, obligations, damages, or liabilities of any nature whatsoever, whether legal or equitable or otherwise, known or unknown, that actually were, or could have been, asserted in the Litigation, whether based upon any violation of any state or federal statute or common law or regulation or otherwise, that arise directly or indirectly out of, or in any way relate to the Litigation or the Allegations.

Further, the Class Representatives shall, by operation of this Final Approval Order and Final Judgment, be deemed to have waived the provisions, rights, and benefits of California Civil Code Section 1542, and any similar law of any state or territory of the United States or principle of common law. California Civil Code Section 1542 provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

The Class Representatives shall, by operation of this Final Approval Order and Final Judgment, be deemed to assume the risk that facts additional, different, or contrary to the facts that each believes or understands to exist, may now exist, or may be discovered after the release set forth in the Agreement becomes effective, and the Class Representatives shall, by operation of the Final Approval Order and Final Judgment, be deemed to have agreed that any such additional, different, or contrary facts shall in no way limit, waive, or reduce the foregoing releases, which shall remain in full force and effect.

17

**B.      Releases by Class Members.**

By operation of this Final Approval Order and Final Judgment, Class Members other than the Class Representatives, and all other persons acting or purporting to act on a Class Member's behalf, including but not limited to the Class Member's parent, child, heir, guardian, associate, co-owner, attorney, agent, administrator, executor, devisee, predecessor, successor, assignee, assigns, representative of any kind, shareholder, partner, director, employee or affiliate, shall have unconditionally, completely, and irrevocably released and discharged the Released Parties from any and all claims, liens, demands, actions, causes of action, rights, duties, obligations, or liabilities, known or unknown, that arise directly or indirectly out of, or in any way relate to the Litigation or the Allegations that (1) seek injunctive, declaratory, equitable, or other non-monetary relief, of any nature whatsoever arising under any legal theory or claim whatsoever, whether by common law, statute, or otherwise; (2) arise under the Resource Conservation and Recovery Act or the Comprehensive Environmental Response, Compensation, and Liability Act; and/or (3) are brought in a representative or collective capacity, of any nature whatsoever arising under any legal theory or claim whatsoever, whether by common law, statute, or otherwise, and seeking any relief of any nature whatsoever. Class Members shall be forever barred from initiating, maintaining, or prosecuting any Released Claims against the Released Parties.

Further, the Class Members shall, by operation of this Final Approval Order and Final Judgment, be deemed to have waived the provisions, rights, and benefits of California Civil Code Section 1542, and any similar law of any state or territory of the United States or principle of common law. California Civil Code Section 1542 provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her,

> would have materially affected his or her settlement with the debtor
> or released party.

The Class Members shall, by operation of this Final Approval Order and Final Judgment, be deemed to assume the risk that facts additional, different, or contrary to the facts that each believes or understands to exist, may now exist, or may be discovered after the release set forth in the Agreement becomes effective, and the Class Members shall, by operation of the Final Approval Order and Final Judgment, be deemed to have agreed that any such additional, different, or contrary facts shall in no way limit, waive, or reduce the foregoing releases, which shall remain in full force and effect.

### C.    Other effects of this Final Approval Order and Final Judgment.

No action taken by the Parties, either previously or in connection with the negotiations or proceedings connected with the Settlement Agreement, shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made or an acknowledgement by any Party of any fault, liability or wrongdoing of any kind whatsoever to any other Party. Neither the Settlement Agreement nor any act performed or document executed pursuant to or in furtherance of the Settlement is or may be deemed to be or may be used as an admission of, or evidence of the validity of any claim made by the Class Members or Class Counsel, or of any fault or omission of any of the Released Parties under this Final Approval Order and Final Judgment or the Settlement Agreement, in any proceeding in any court, administrative agency, or other tribunal. Defendant's agreement not to oppose the entry of this Final Approval Order and Final Judgment shall not be construed as an admission or concession by Defendant that class certification was appropriate in the Litigation or would be appropriate in any other action.

Except as provided in this Final Approval Order and Final Judgment, Plaintiffs shall take nothing against Defendant by their Complaint. This Final Approval Order and Final Judgment

shall constitute a final judgment binding the Parties and Class Members with respect to this Litigation.

The claims of Keith Lyons and Greg Nason that were not released as set forth in the Settlement Agreement and above are hereby dismissed without prejudice. In all other respects, this Litigation is hereby dismissed on the merits and with prejudice, and final judgment is entered thereon, as set forth in this Final Approval Order and Final Judgment.

Without affecting the finality of the Final Approval Order and Final Judgment hereby entered, the Court reserves jurisdiction over the implementation of the Settlement Agreement. In the event the Effective Date does not occur in accordance with the terms of the Settlement Agreement, then this Final Approval Order and Final Judgment shall be rendered null and void and shall be vacated, and in such event, all orders and judgments entered and releases delivered in connection herewith shall be null and void and the Parties shall be returned to their respective positions *ex ante*.

There is no just reason for delay in the entry of this Final Judgment, and immediate entry by the Clerk of Court is expressly directed.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this _____ day of _____, 202__.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

# **Exhibit 5**

## <u>LIST OF CONTRACTORS TO PERFORM THE PROPERTY CHARACTERIZATION AND REMEDIATION WORK AS SET FORTH IN PARAGRAPH 3.3</u>

- SKA Consulting, L.P.
  Contact: Scott Leafe, President/Managing Partner, leafesk@skaconsulting.com

- GSI Environmental
  Contact: John Connor, Founder/Principal, jaconnor@gsi-net.com

- Edge Engineering & Science
  Contact: Christopher Colville, Partner, cjcolville@edge-es.com

- Golder Associates (now a unit of WSP)
  Contact: Eric Pastor, Principal/Practice Leader, eric_pastor@golder.com