United States District Court
Southern District of Texas
**ENTERED**
June 06, 2024
Nathan Ochsner, Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| SHANNAN WHEELER, *et al.*, | ) ) ) CIVIL ACTION NO.: 4-17-cv-2960 |
| Plaintiffs, | ) ) ) |
| v. | ) The Hon. Keith P. Ellison |
| ARKEMA INC., | ) ) |
| Defendant. | ) ) ) |

## ORDER GRANTING
## FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FINAL JUDGMENT

Plaintiffs Larry Anderson, Tanya Anderson, Bevely Flannel, Roland Flannel, Corey Prantil, Betty Whatley, Bret Simmons, and Phyllis Simmons have moved the Court for final approval of a proposed class-action settlement with Defendant Arkema Inc., the terms and conditions of which are set forth in the Settlement Agreement filed with the Court on December 29, 2023 (Dkt. 333-2).[1] For the reasons described more fully below, the Court **GRANTS** final approval of the Settlement.

### PROCEDURAL HISTORY

This case concerns fires that occurred at Defendant's facility located at 18000 Crosby Eastgate Rd., Crosby, Texas 77532, during Hurricane Harvey in late August and early September 2017. The procedural history is summarized in the Settlement at Sections 1.1 through 1.22.

---

[1] Capitalized terms herein have the same meaning as set forth in the Settlement Agreement.

1

**SUMMARY OF SETTLEMENT TERMS**

Class Members are "all residents and real property owners located within a 7-mile radius of the Crosby, Texas, Arkema Inc. Chemical Plant at any time since August 30, 2017."[2] Under the Settlement Agreement, Defendant shall make a payment in the amount of $24,000,000.00 into a single escrow account, which the Settlement Administrator shall direct into four escrow accounts as follows: (1) $20,100,000.00 into the Property Characterization/Remediation Escrow Account to fund the Property Characterization and Remediation Work; (2) $1,700,000.00 into the Anonymized Epidemiological Study Escrow Account to fund the Anonymized Epidemiological Study; (3) $200,000.00 into the Incentive Awards Escrow Account; and (4) $2,000,000.00 into the Expenses Escrow Account.

Class Members who currently own real property located within a seven-mile radius of Defendant's Crosby facility (measured as a straight-line distance), will be eligible to have their real property tested for dioxin compounds, if they request that, and, depending on eligibility criteria, will be eligible to have dioxin compounds removed from their real property (each subject to fund availability). In addition, all Class Members will have the opportunity to participate in an anonymized epidemiological study to track the potential for future development of certain diseases.

---

[2] Excluded from the class are (a) the Honorable Keith P. Ellison and the Honorable Dena Palermo, any member of their staffs who worked directly on this Litigation, and any member of their immediate families; (b) counsel for the Parties, any member of their respective staffs who worked directly on this Litigation, and any member of their immediate families; (c) any government entity; (d) any entity or real property in which Defendant has a controlling interest; and (e) any of Defendant's subsidiaries, parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns.

The Settlement also provides that Class Counsel may seek an award of up to $8,500,000.00 in Attorneys' Fees, up to $2,000,000.00 to reimburse their Attorneys' Expenses, and up to $200,000.00 total for Class Representatives Incentive Awards.

## NOTICE AND SETTLEMENT ADMINISTRATION

The Settlement Agreement is being administered by a well-known, independent settlement administrator, Edgar C. Gentle, III. Following the Court's preliminary approval, the Settlement Administrator established the Settlement Website at crosbyharveysettlement.com, which contained (1) the Long Form Notice that provides (a) more details about the case and the Settlement, (b) the procedures for Class Members to object to the Settlement, (c) answers to frequently asked questions about the Settlement, and (d) a contact information page that includes the address and telephone numbers for the Settlement Administrator and Class Counsel; (2) the Settlement Agreement; and (3) the signed Preliminary Approval Order. In addition, the papers in support of Final Approval and the Application for Attorneys' Fees, Attorneys' Costs, and an Incentive Award were placed on the Settlement Website after they were filed. The Settlement Administrator also operated a toll-free number for class member inquiries.

Notice of the Settlement was provided to the Class Members via the Postcard Notice mailed to each Class Member and the Long Form Notice posted to the Settlement Website.

Edgar C. Gentle, III, is hereby appointed Settlement Administrator to carry out all the duties of the Settlement Administrator set forth in the Settlement Agreement and this Order.

## ANALYSIS

**I.     Jurisdiction.**

This court has jurisdiction under 28 U.S.C. § 1332(d)(2).

**II.     Notice.**

The Notice Plan provided notice to Class Members directly. The Court reaffirms the finding it made in the Preliminary Approval Order that the Notice Plan provided the best practicable notice to the Class Members and satisfied the requirements of due process. *See* Fed. R. Civ. P. 23(e)(1) ("[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal"); *ODonnell v. Harris Cty., Tex.*, No. 16-1414, 2019 WL 4224040, at *26 (S.D. Tex. Sept. 5, 2019) (Rosenthal, J.) (regarding Rule 23(b)(2) class, "[d]ue process is satisfied if the notice provides class members with the information reasonably necessary for them to make a decision whether to object to the settlement" (internals omitted)).

**III.    Final approval of the Settlement.**

A court may approve a proposed class-action settlement of a certified class only:

after a hearing and on a finding that it is fair, reasonable, and adequate after considering whether:

    (A) the class representatives and class counsel have adequately represented the class;

    (B) the proposal was negotiated at arm's length;

    (C) the relief provided for the class is adequate, taking into account:

        (i) the costs, risks, and delay of trial and appeal;

        (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

        (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

        (iv) any agreement required to be identified under Rule 23(e)(3); and

    (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). In addition, courts within the Fifth Circuit consider the following six factors in determining whether to approve a class-action settlement: (1) the existence of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings; (4) plaintiff's probability of success on the merits; (5) the range of possible recovery; and (6) the opinions of class counsel, class representatives, and absent class members. *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983). The Rule 23(e)(2) requirements overlap significantly with the *Reed* factors, so the Court will consider the Rule 23(e)(2) requirements as informed by the *Reed* factors.

In reviewing the Settlement, the Court does not address whether the Settlement is ideal or the best outcome, but determines only whether the settlement is fair, free of collusion, and consistent with Plaintiffs' fiduciary obligations to the class. *Glover v. Woodbolt Dist., Ltd.*, No. 12-2191, 2012 WL 5456361, at *1 (S.D. Tex. Nov. 7, 2012) (Miller, J.).

For the reasons further detailed below and discussed at the Final Approval hearing, the Court finds that the Settlement is fair, reasonable, and adequate to all Class Members, including those who are minors, lack capacity, incompetent, or deceased, under the Rule 23(e)(2) requirements and *Reed* factors. Class Counsel weighed the risks inherent in establishing all the elements of their claims and proving entitlement to the relief requested. Defendant vigorously denied all allegations. Proceeding to trial would have been costly, recovery was not guaranteed, and there was the possibility of continued, protracted appeals. The Settlement was reached only after extensive litigation, including requesting and receiving written discovery responses, examining hundreds of thousands of pages of Defendant's documents, retaining 20+ expert witnesses and reviewing their expert reports, conducting more than 30 depositions, participating in days of hearings on the admissibility of expert testimony, conducting two full class certification

proceedings in the matter, including two full rounds of briefing and two lengthy hearings, and an interlocutory appeal and request for a second interlocutory appeal. Counsel for both Parties were highly experienced. There is no factual basis to support any allegation of collusion or self-dealing.

### A. The Class Representatives and Class Counsel have adequately represented the Class.

In the Court's order certifying the Class (Dkt. No. 316), the Court found that the Class Representatives and Class Counsel adequately represented the interests of the Class. The Court has seen no evidence to contradict its previous finding, and reconfirms it here. Class Counsel has vigorously prosecuted this action through motion practice, defense of an interlocutory appeal and request for a second interlocutory appeal, extensive discovery, and formal mediation, and therefore "[a]mple record evidence shows that the class has been ably and diligently represented" and "[t]his weighs heavily in favor of approving the … settlement agreement." *ODonnell*, 2019 WL 6219933, at *10. Rule 23(e)(2)(A)'s requirement is met.

### B. The Settlement was negotiated at arm's length.

Rule 23(e)(2)(B) and the first *Reed* factor both question whether fraud or collusion exists in the negotiation. This Court finds that the Settlement is the product of serious, non-collusive, arms'-length negotiations by experienced counsel with the assistance of the Honorable Dena Palermo as a neutral mediator. *See, e.g.*, *Cole v. Collier*, No. 14-1698, 2018 WL 2766028, at *4 (S.D. Tex. June 8, 2018) (Ellison, J.) ("There is no evidence of collusion between the parties in the record…. The parties reached agreement after arm's-length negotiations, conducted in good faith. A neutral mediator facilitated the settlement negotiations."); *Jasso v. HC Carriers, LLC*, No. 20-212, 2022 WL 16927813, at *4 (S.D. Tex. Oct. 19, 2022) (Kazen, M.J.) ("the parties represent that their settlement agreement was the product of substantial arm's-length negotiations, with the

6

assistance of an experienced … mediator. Accordingly, the first [*Reed*] factor weighs in favor of the settlement agreement." (internals omitted)).

The Court has independently and carefully reviewed the record for any signs of collusion and self-dealing, and finds that no collusion or self-dealing occurred. Specifically, the Court finds that Class Counsel did not compromise the claims of the settlement class in exchange for higher fees. The Parties did not discuss or negotiate Attorneys' Fees until after the Parties had already agreed upon relief for the Class. The requirements of Rule 23(e)(2)(B) and the first *Reed* factor are met.

### C. The relief to the Class is adequate.

Rule 23(e)(2)(C) requires the relief granted by the Settlement to be adequate, taking into account (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief; (iii) the terms of any award of attorneys' fees; and (iv) any side agreements. Rule 23(e)(2)(C)'s considerations also implicate *Reed* factors two through five: the complexity, expense, and likely duration of the litigation; the stage of the proceedings; plaintiffs' probability of success; and the range of possible recovery. *See Kostka v. Dickey's Barbecue Restaurants, Inc.*, No. 20-3424, 2022 WL 16821685, at *11 (N.D. Tex. Oct. 14, 2022) (comparing Rule 23(e)(2)(C)'s requirements with the *Reed* factors). For the reasons explained below, Rule 23(e)(2)(C)'s requirements and *Reed* factors two through five are satisfied.

#### 1. Recovery to the Class.

Although not articulated as a separate factor in Rule 23(e), "[t]he relief that the settlement is expected to provide to class members is a central concern." Fed. R. Civ. P. 23(e)(2)(C)–(D), adv. comm. n. to 2018 am. In evaluating the relief provided, there "is a strong presumption in favor

of finding the Settlement Agreement fair." *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 286 (W.D. Tex. 2007) (internals omitted).

Defendant has agreed to make a payment in the amount of $24,000,000.00 into a single escrow account, which the Settlement Administrator shall direct into four escrow accounts as follows: (1) $20,100,000.00 into the Property Characterization/Remediation Escrow Account to fund the Property Characterization and Remediation Work; (2) $1,700,000.00 into the Anonymized Epidemiological Study Escrow Account to fund the Anonymized Epidemiological Study; (3) $200,000.00 into the Incentive Awards Escrow Account; and (4) $2,000,000.00 into the Expenses Escrow Account. Class Members who currently own real property located within a seven-mile radius of Defendant's Crosby facility (measured as a straight-line distance), will be eligible to have their real property tested for dioxin compounds, if they request that, and, depending on eligibility criteria, will be eligible to have dioxin compounds removed from their real property (each subject to fund availability). In addition, all Class Members will have the opportunity to participate in an anonymized epidemiological study to track the potential for future development of certain diseases.

Further, before agreeing upon the terms of the Settlement, the Parties engaged in extensive factual investigation, which included numerous fact and expert depositions, document production in the hundreds of thousands of pages, and discovery. The Parties also had undertaken extensive briefing and argument on various significant legal issues, including in connection with class certification. The Court had issued multiple orders and decisions on these important issues. The record was thus sufficiently developed that the Parties were fully informed as to the viability of the claims and able to adequately evaluate the strengths and weaknesses of their respective positions and risks to both sides if the case did not settle. This favors Final Approval.

### 2. The costs, risks, and delay of trial and appeal.

"When the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened." *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1064 (S.D. Tex. 2012) (Rosenthal, J.) (internals omitted); *see also Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004) ("[S]ettling … avoids the risks and burdens of potentially protracted litigation."). The Parties have extensively litigated this case, which is already in its sixth year, in this Court and before the Fifth Circuit, resulting in millions of dollars in fees and costs. If the case proceeded, additional discovery, likely as contested as the past discovery, would be required. Trial "would be lengthy, burdensome, and would consume tremendous time and resources of the Parties and the Court." *ODonnell*, 2019 WL 4224040, at *10 (internals omitted). By reaching a Settlement before additional motions practice and trial, the Class Representatives avoided expense and delay, and ensured recovery for the Class. This favors Final Approval.

### 3. The effectiveness of the proposed method of distributing relief to the Class.

The Court concludes that the method of distributing relief to the Class is reasonable. All Class Members who currently own real property located within a seven-mile radius of Defendant's Crosby facility (measured as a straight-line distance), will be eligible to have their real property tested for dioxin compounds, if they request that, and, depending on eligibility criteria, will be eligible to have dioxin compounds removed from their real property (each subject to fund availability). For a period established in the Settlement Agreement, all Class Members are eligible for site assessment and characterization for any real property that they own within the Class Area. The collection and analysis of soil or indoor dust samples will be performed on a first-come, first-served basis. For a period established in the Settlement, any real property that exceeds a State-

established standard for dioxin compounds will be eligible for remediation and, following that period, additional real properties will be eligible for remediation based on the Settlement Administrator's discretion.

In addition, all Class Members will have the opportunity to participate in an anonymized epidemiological study to track the potential for future development of certain diseases.

This factor favors Final Approval.

### 4. The terms of any proposed award of Attorneys' Fees.

As discussed in Section IV, below, the Court finds the proposed award of Attorneys' Fees reasonable given the duration and hotly litigated nature of this case. This favors Final Approval.

### 5. Side agreements.

The Court is required to consider "any agreements required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(iv). The Parties have not identified any such agreement made in connection with the proposed Settlement. This favors Final Approval.

## D. The proposal treats Class Members equitably relative to each other.

All Class Members are entitled to the same relief under the Settlement. Rule 23(e)(2)(D)'s requirements are therefore satisfied.

## E. The opinions of Class Counsel and the Class Representatives, and the response of Class Members.

Finally, the Court considers the sixth *Reed* factor: the opinions of Class Counsel and the Class Representatives, and the response of Class Members. The "endorsement of class counsel is entitled to deference, especially in light of class counsel's significant experience in complex civil litigation and their lengthy opportunity to evaluate the merits of the claims." *DeHoyos*, 240 F.R.D. at 292; *see also Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316, 346 (N.D. Tex. 2011) ("As class counsel tends to be the most familiar with the intricacies of a class action lawsuit and settlement,

the trial court is entitled to rely upon the judgment of experienced counsel for the parties." (internals omitted)). Class Counsel have endorsed the Settlement. Class Counsel's opinions as to the benefits of the Settlement are consistent with the Court's own analysis of the Settlement under Rule 23(e)(2).

The Class Representatives likewise endorse the Settlement. As for other Class Members, out of an estimated 30,000 Class Members, there were only __ objections (less than __% of the Class). This reflects a positive response from the class. *See In re Chinese-Manuf. Drywall Prods. Liab. Litig.*, 424 F. Supp. 3d 456, 491 (E.D. La. 2020) ("The absence or small number of objectors may provide a helpful indication that the settlement is fair, reasonable, and adequate" (internals omitted)). All proper objections were addressed on the record at the Final Approval Hearing.

The sixth *Reed* factor thus supports Final Approval. Based on the record evidence and argument submitted by the Parties in connection with the Settlement, as well as the Court's familiarity with the claims and defenses, the Court finds that the Class's recovery under the Settlement is fair, reasonable, and adequate pursuant to Rule 23(e)(2) and the *Reed* factors.

## IV.  Attorneys' Fees.

The Court has fully assessed and finds fair and reasonable the payment by Defendant of attorneys' fees to Class Counsel in the amount, time, and manner provided for in the Settlement Agreement and requested in the Motion for Attorneys' Fees, Costs, and Incentive Awards ("Fee Motion"). All such terms are the product of non-collusive, arms'-length negotiations. The Court notes that approval of the Settlement Agreement was not conditioned on the award of any attorneys' fees or costs.

The Court has reviewed at length the Fee Motion and Class Counsel's submissions in support of their application for an award of attorneys' fees.

11

In determining "reasonable" attorneys' fees, under Supreme Court and Fifth Circuit precedent, the "lodestar figure has, as its name suggests, become the guiding light" in the determination. *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011); *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). The lodestar is computed by multiplying the number of hours reasonably expended by the reasonable hourly rate. *Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 850 (5th Cir. 1998).

Here, the submissions included in the Fee Motion reflect that Class Counsel's collective lodestar is $16,032,304.65. This figure exceeds the total amount that was requested in the Fee Motion and that was negotiated, and agreed by Defendant, to be paid pursuant to the Settlement Agreement. In reviewing Plaintiffs' submissions, based upon the Court's experience and knowledge of rates charged by attorneys of similar experience doing similar work, the Court finds that Class Counsel's hourly rates are reasonable and are commensurate with the skill and experience of the participating attorneys and their legal support staff. *See Klein v. O'Neal, Inc.*, 705 F. Supp.2d 632 (N.D. Tex. 2010) (court is itself an expert in attorneys' fees and may consider its own knowledge concerning reasonable rates charged by attorneys of similar experience and ability). Likewise, the amount of time devoted to the action was reasonable, given Defendant's vigorous defense to Plaintiffs' claims, including an interlocutory appeal of the Court's order certifying a class and further proceedings on remand, which led to the certification of the Class over Defendant's strong objections.

### B. The *Johnson* factors.

In assessing attorneys' fees in a class-action suit, the Court must scrutinize the fee award under the factors identified by the Fifth Circuit in *Johnson v. Ga. Highway Express*, 488 F.2d 714 (5th Cir. 1976). The *Johnson* factors are: (1) the time and labor involved; (2) the novelty and

difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the political undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id*. at 717-19. "To fulfill its duty, the district court must not cursorily approve the attorneys' fee provision of a class settlement or delegate that duty to the parties." *In re High Sulfur Content Gasoline Prod. Liab. Litig.*, 517 F.3d 220, 229 (5th Cir. 2008). The Court has considered the *Johnson* factors in assessing whether attorneys' fees are appropriate in this case.

Here, the *Johnson* factors weigh heavily in Class Counsel's favor. Of the *Johnson* factors, the Fifth Circuit has explained that the court should "give special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience and ability of counsel." *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). There is no question that prosecuting and settling these difficult claims demanded considerable time, skill and labor. Class Counsel conducted extensive discovery, including use of expert testimony, and overcame stiff opposition to the certification of a class. Ultimately, Class Counsel reached a favorable Settlement with the Defendant, after spending more than 28,430.09 hours on this case. The Settlement Agreement provides an excellent result on behalf of the Class, none of which would have been available from Defendant absent Class Counsel's work in pursuing these claims. Class Counsel's ability to seek other work was undoubtedly limited by the sizable amount of work that this case required. Adequate compensation is necessary to ensure that counsel of this caliber is

available to undertake these kinds of cases in the future. Accordingly, *Johnson* factors (1), (2) (3), (4), (5), (8), (9) and (10) weigh in Class Counsel's favor. *Johnson*, 488 F.2d at 717–18.

Moreover, Class Counsel prosecuted the action entirely on a contingent fee basis, assuming a significant risk of nonpayment. Counsel should be compensated for the risk assumed by pursuing the case and achieving the excellent result for the Class. Accordingly, *Johnson* factors (6) and (7) weigh in Class Counsel's favor as well. *Id.*

The Court recognizes that the amount requested by Class Counsel in the Fee Motion is less than their full lodestar and that, if the case were to proceed and absent a negotiated agreement as to the fee issue, Plaintiffs might have argued their entitlement to the full lodestar amount under the fee-shifting provisions of the Resources Conservation and Recovery Act, 42 U.S.C. § 6901, *et seq.* ("RCRA"). However, Defendant may have argued that RCRA's fee-shifting provisions do not apply, or for reduction to Plaintiffs' lodestar amount below the negotiated figure. The Court need not address these or other differences in legal positions on the fee issue that might have arisen, but did not because of the Settlement. The Court simply finds, based on careful review and consideration of the *Johnson* factors, that the negotiated amount is fair and reasonable under the circumstances. The Court finds that Class Counsel has zealously prosecuted this action over the course of many years and has provided high quality representation throughout that time. The litigation was hotly contested, and it was in that challenging context that Class Counsel succeeded in negotiating what is a very beneficial Settlement on behalf of the Class.

In short, Class Counsel's effort warrants the requested and negotiated fee. Pursuant to Rule 23(h), the Court finally approves an award of Attorneys' Fees in the amount of $8,500,000, which is to be paid separately by Defendant and in no way detracts from the relief afforded to the Class.

## V. Attorneys' Expenses.

The Court finds that reimbursement of the reasonable expenses incurred in the prosecution of this class action is appropriate. After reviewing the parties' submissions in support of the Unopposed Motion and in conjunction with the Final Approval hearing, and pursuant to Rule 23(h), the Court finally approves reimbursement of Attorneys' Expenses in the amount of $1,862,175.06. This approved amount of Attorneys' Expenses represents all claims for expenses past, present and future incurred in connection with this litigation. Moreover, the payment of expenses will, pursuant to the terms of the Settlement Agreement, be paid from the Settlement Fund, specifically, the Expenses Escrow Account.

## VI. Class Representative Incentive Awards.

The Settlement Agreement contemplates the Court's ability to approve Incentive Award payments to the Class Representatives not to exceed $200,000.00 as compensation for the Class Representatives' time and effort undertaken in this Litigation in pursuing the interests of the Class for nearly six years. After reviewing the parties' submissions in support of the Unopposed Motion, including declarations of counsel that detailed the extensive and time-consuming efforts of the Class Representatives in pressing the litigation forward to a successful result for the Class, the Court approves the Incentive Award payments. In making the decision to approve the Incentive Award payments, the Court considers the actions Plaintiffs have taken to protect the interests of the Class, the degree to which the Class has benefited from those actions, and the amount of time and effort each of the Plaintiffs have expended in pursuing the litigation. *Humphrey v. United Way of Texas Gulf Coast*, 802 F. Supp.2d 847, 868 (S.D. Tex. 2011).

The Court finds this case to be a prime example of a case where incentive payments may serve "to compensate class representatives for the services they provide and the named plaintiff is an essential ingredient[.]" *Id.* Plaintiffs' submissions to date in support of approval of the

Settlement demonstrate the unusually high degree of involvement the named representatives have had in this case in pursuing the greater good of an effective and beneficial resolution for all members of the Class. The Court finds that Incentive Awards are appropriate totaling $200,000.00 and to be divided evenly among the eight named Class Representatives: Larry Anderson; Tanya Anderson; Bevely Flannel; Roland Flannel; Corey Prantil; Betty Whatley; Bret Simmons; and Phyllis Simmons. Pursuant to the Settlement Agreement, the Incentive Awards will be paid from the Settlement Fund, specifically, the Incentive Awards Escrow Account.

**VII. Compliance with the Class Action Fairness Act.**

The record establishes that the Settlement Administrator served the required notices under the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, with the documentation required by 28 U.S.C. § 1715(b)(1-8).

**VIII. Distribution of Settlement Fund and payment of Administrative Costs.**

Defendant shall pay the amount of the Settlement Fund as set forth in Part III of the Settlement Agreement. No later than 10 days after Defendant pays the amount of the Settlement Fund, the Settlement Administrator shall create and fund the four escrow accounts and funds described in Part III: (i) the Property Characterization/Remediation Escrow Account; (ii) the Anonymized Epidemiological Study Escrow Account; (iii) the Incentive Awards Escrow Account; and (iv) the Expenses Escrow Account. Administration Costs and other Expenses/Costs associated with the Settlement shall be paid from the Expenses Escrow Account, as provided for in the Settlement. The Settlement Fund hereby created is a Qualified Settlement Fund ("QSF") under IRC 468B and Treasury Regulation 1.468B-1, with the Settlement Administrator appointed by this Order to serve as QSF Administrator.

Upon completion of the implementation and administration of the Settlement, as set forth in the Settlement Agreement, the Settlement Administrator shall provide a declaration for filing

with the Court containing an accounting of the Settlement Fund and the amount of the Settlement Fund, if any, to be distributed *cy pres*.

## IX. Releases and other effects of this Final Approval Order and Final Judgment.

### A. Releases by Class Representatives.

By operation of this Final Approval Order and Final Judgment, the Class Representatives (including any Class Representative and all other persons acting or purporting to act on their behalf, including but not limited to his/her relatives, executors, heirs, successors, agents, and assigns) shall have unconditionally, completely, and irrevocably released and forever discharged the Released Parties from and shall be forever barred from instituting, maintaining, or prosecuting any and all claims, liens, demands, actions, causes of action, rights, duties, obligations, damages, or liabilities of any nature whatsoever, whether legal or equitable or otherwise, known or unknown, that actually were, or could have been, asserted in the Litigation, whether based upon any violation of any state or federal statute or common law or regulation or otherwise, that arise directly or indirectly out of, or in any way relate to the Litigation or the Allegations.

Further, the Class Representatives shall, by operation of this Final Approval Order and Final Judgment, be deemed to have waived the provisions, rights, and benefits of California Civil Code Section 1542, and any similar law of any state or territory of the United States or principle of common law. California Civil Code Section 1542 provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

The Class Representatives shall, by operation of this Final Approval Order and Final Judgment, be deemed to assume the risk that facts additional, different, or contrary to the facts that each

17

believes or understands to exist, may now exist, or may be discovered after the release set forth in the Agreement becomes effective, and the Class Representatives shall, by operation of the Final Approval Order and Final Judgment, be deemed to have agreed that any such additional, different, or contrary facts shall in no way limit, waive, or reduce the foregoing releases, which shall remain in full force and effect.

**B.     Releases by Class Members.**

By operation of this Final Approval Order and Final Judgment, Class Members other than the Class Representatives, and all other persons acting or purporting to act on a Class Member's behalf, including but not limited to the Class Member's parent, child, heir, guardian, associate, co-owner, attorney, agent, administrator, executor, devisee, predecessor, successor, assignee, assigns, representative of any kind, shareholder, partner, director, employee or affiliate, shall have unconditionally, completely, and irrevocably released and discharged the Released Parties from any and all claims, liens, demands, actions, causes of action, rights, duties, obligations, or liabilities, known or unknown, that arise directly or indirectly out of, or in any way relate to the Litigation or the Allegations that (1) seek injunctive, declaratory, equitable, or other non-monetary relief, of any nature whatsoever arising under any legal theory or claim whatsoever, whether by common law, statute, or otherwise; (2) arise under the Resource Conservation and Recovery Act or the Comprehensive Environmental Response, Compensation, and Liability Act; and/or (3) are brought in a representative or collective capacity, of any nature whatsoever arising under any legal theory or claim whatsoever, whether by common law, statute, or otherwise, and seeking any relief of any nature whatsoever. Class Members shall be forever barred from initiating, maintaining, or prosecuting any Released Claims against the Released Parties.

Further, the Class Members shall, by operation of this Final Approval Order and Final Judgment, be deemed to have waived the provisions, rights, and benefits of California Civil Code

18

Section 1542, and any similar law of any state or territory of the United States or principle of common law. California Civil Code Section 1542 provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

The Class Members shall, by operation of this Final Approval Order and Final Judgment, be deemed to assume the risk that facts additional, different, or contrary to the facts that each believes or understands to exist, may now exist, or may be discovered after the release set forth in the Agreement becomes effective, and the Class Members shall, by operation of the Final Approval Order and Final Judgment, be deemed to have agreed that any such additional, different, or contrary facts shall in no way limit, waive, or reduce the foregoing releases, which shall remain in full force and effect.

### C. Other effects of this Final Approval Order and Final Judgment.

No action taken by the Parties, either previously or in connection with the negotiations or proceedings connected with the Settlement Agreement, shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made or an acknowledgement by any Party of any fault, liability or wrongdoing of any kind whatsoever to any other Party. Neither the Settlement Agreement nor any act performed or document executed pursuant to or in furtherance of the Settlement is or may be deemed to be or may be used as an admission of, or evidence of the validity of any claim made by the Class Members or Class Counsel, or of any fault or omission of any of the Released Parties under this Final Approval Order and Final Judgment or the Settlement Agreement, in any proceeding in any court, administrative agency, or other tribunal. Defendant's agreement not to oppose the entry of this Final Approval Order and Final Judgment

shall not be construed as an admission or concession by Defendant that class certification was appropriate in the Litigation or would be appropriate in any other action.

Except as provided in this Final Approval Order and Final Judgment, Plaintiffs shall take nothing against Defendant by their Complaint. This Final Approval Order and Final Judgment shall constitute a final judgment binding the Parties and Class Members with respect to this Litigation.

The claims of Keith Lyons and Greg Nason that were not released as set forth in the Settlement Agreement and above are hereby dismissed without prejudice. In all other respects, this Litigation is hereby dismissed on the merits and with prejudice, and final judgment is entered thereon, as set forth in this Final Approval Order and Final Judgment.

Without affecting the finality of the Final Approval Order and Final Judgment hereby entered, the Court reserves jurisdiction over the implementation of the Settlement Agreement. In the event the Effective Date does not occur in accordance with the terms of the Settlement Agreement, then this Final Approval Order and Final Judgment shall be rendered null and void and shall be vacated, and in such event, all orders and judgments entered and releases delivered in connection herewith shall be null and void and the Parties shall be returned to their respective positions *ex ante*.

The Clerk is directed to administratively **CLOSE** this case.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this 6th day of June, 2024.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE